IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

_____
)
SUSAN LAFOREST,                             )
                                            )
                                            )
            Plaintiff,                      )
                                            )   C. A. NO.: 04-30195-MAP
    v.                                      )
                                            )
AMERIQUEST MORTGAGE COMPANY,                )
BRAD BIGDA,                                 )
JOHN DOE 1                                  )
                                            )
            Defendants                      )
                                            )
_____)

**DEFENDANT BRADLEY JOSEPH BIGDA'S MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION OF TO DISMISS PLAINTIFF'S COMPLAINT
AGAINST HIM FOR LACK OF PERSONAL JURISDICTION AND
<u>INSUFFICIENCY OF SERVICE OF PROCESS</u>**

  Bradley Joseph Bigda ("Bigda") hereby submits the following memorandum in support of his motion, pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, that plaintiff Susan LaForest's ("plaintiff") Complaint against him be dismissed in its entirety. The claims alleged in plaintiff's Complaint did not arise from Bigda's transaction of business in the Commonwealth, nor did they arise from any tortious injury by an act or omission of Bigda within the Commonwealth. In addition, Bigda lacks minimum contacts with the Commonwealth such that the exercise of personal jurisdiction over him would comport with traditional notions of fair play and substantial justice.

  Therefore, Bigda respectfully requests that this Court dismiss plaintiff's Complaint against Bigda. As grounds, Bigda states as follows:

BOS-716676 v3

**FACTS**

In the Complaint, plaintiff alleges that on or about April 2, 2004, plaintiff attempted to refinance a loan with Ameriquest. Complaint at ¶¶ 19-20. The loan transaction, however, never consummated. Plaintiff subsequently complained to Ameriquest about plaintiff's failed loan transaction, and Ameriquest attempted to work out a resolution, which attempt also failed. Plaintiff brings this Complaint against Ameriquest alleging various tort-based and contract-based claims arising out of her failed April loan and the failed workout attempts. Complaint at ¶¶ 60-88. Plaintiff also alleges that Ameriquest reported negative credit information to credit reporting agencies in connection with her failed loan transaction. Complaint at ¶¶ 54-59.

In addition to bringing claims against Ameriquest, plaintiff also adds Bigda as a defendant. Bigda is an employee of Ameriquest who has had several communications with plaintiff's counsel following the failed April 2, 2004 transaction in a failed attempt to workout plaintiff's dispute.

Beginning in May 2004, plaintiff and her counsel contacted Ameriquest to dispute the failed funding of her April 2, 2004 loan transaction. Complaint at ¶ 32. After an initial review of the file, the matter was referred to Ameriquest's Customer Resolution group. Subsequently, Bigda was assigned to investigate and resolve the matter in response to plaintiff's contacting Ameriquest at its corporate headquarters in Orange, California. See Declaration of Bradley Joseph Bigda, dated January 10, 2005 at ¶¶ 5, 7, submitted contemporaneously herewith ("Bigda Decl."). Bigda is a resident of the State of California and is employed by defendant Ameriquest Mortgage Company ("Ameriquest") as a mortgage loan workout specialist in Ameriquest's offices in Orange, California. See Bigda Decl. at ¶¶ 2-3.

Up until this point, Bigda had no role in the December 2003 refinance transaction nor did Bigda have a role in the failed mortgage loan transaction between Ameriquest and plaintiff in April 2004. See Bigda Decl. at ¶ 6. Bigda was solely involved on behalf of Ameriquest to work out plaintiff's complaint concerning the failed April 2, 2004 mortgage loan transaction. See Bigda Decl. at ¶¶ 5-7.

Bigda, in his role as a loan workout specialist for the Customer Resolution group, had a series of communications with plaintiff's counsel, Jason Fregeau, in which Ameriquest was attempting to workout a dispute that had arisen over plaintiff's failed April 2, 2004 loan transaction. See Bigda Decl. at ¶¶ 8-10. At no time did Bigda personally have a conversation with plaintiff. See Bigda Decl. at ¶ 11. By September 2004, plaintiff determined that the attempts to workout the loan proved unsuccessful and therefore declared the settlement "null and void." Complaint, ¶ 31. Plaintiff subsequently filed the present action.

Although the Complaint brings two counts under the Fair Credit Reporting Act generally against all defendants, Complaint, ¶¶ 54-59, the Complaint specifically alleges that it was defendant Ameriquest that placed negative information on plaintiff's credit history, not Bigda. Complaint, ¶ 31. In fact, Bigda has no role in Ameriquest's providing credit information to credit reporting agencies and specifically did not do so with respect to plaintiff. See Bigda Decl. at ¶¶ 14-15. There would be no good faith basis for alleging that Bigda had any role in furnishing negative credit information to any credit reporting agency with respect to plaintiff.

At no time in connection with this failed workout, nor at any other time, did Bigda travel to the Commonwealth of Massachusetts or commit any act within the Commonwealth of Massachusetts. See Bigda Decl. at ¶ 12. Bigda has never been to Massachusetts. See Bigda

3

Decl. at ¶ 12.  Instead, Bigda's actions were taken in California in response to a complaint directed by plaintiff and her counsel into California.  See Bigda Decl. at ¶ 5.

During the course of his communications with plaintiff's counsel, Bigda was acting solely in his capacity as an employee, representative and agent of Ameriquest.  See Bigda Decl. at ¶ 16.  Bigda is not an officer or director of Ameriquest nor does he have a management position with Ameriquest.  See Bigda Decl. at ¶ 4.  His job position is that of a junior business associate in the Customer Resolution Group.  See Bigda Decl. at ¶ 4.  At no time in his dealings with plaintiff, through her counsel, did Bigda act outside of the scope of his employment with Ameriquest.  See Bigda Decl. at ¶ 16.

Bigda has no financial interest either in the failed loan in April 2004 or in the failed loan workout attempt during the period from May 2004 to September 2004 and did not derive any personal benefit apart from Ameriquest in connection with his dealing with plaintiff's counsel.  See Bigda Decl. at ¶ 17.

Plaintiff attempted to effect service upon Bigda by serving a copy of the Complaint upon him at Ameriquest's offices in Orange, California.

## ARGUMENT

**I.    BIGDA IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER THE MASSACHUSETTS LONG-ARM STATUTE AND THUS SERVICE UPON HIM IN CALIFORNIA IS NOT EFFECTIVE TO HALE HIM INTO THIS COURT**

Fed. R. Civ. P. 4(k), in relevant part, defines the territorial limits of effective service of process as follows:  "[t]he service of a summons…is effective to establish jurisdiction over the person of a defendant…who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."  Rule 4(k)(1)(A).  As a non-resident defendant upon whom plaintiff attempted to effect service of process in California,

4

Bigda may be summonsed into the Court only if he could be subjected to the jurisdiction of the courts of the Commonwealth of Massachusetts under the Massachusetts long-arm statute, G.L. c. 223A.  Under the circumstances of the present action, a Massachusetts court may exercise personal jurisdiction over Bigda only (1) if the cause of action alleged arose from Bigda's causing tortious injury by an act or omission in Massachusetts and (2) if the exercise of jurisdiction is consistent with the Due Process Clause of the United States Constitution. LaVallee v. Parrot-Ice Drink Prods. Of America, Inc., 193 F. Supp.2d 296, 299-300 (D. Mass. 2002) (citation omitted).

Plaintiff bears the burden of proving the existence of personal jurisdiction.  LaVallee, 193 F. Supp.2d at 292.  Personal jurisdiction over Bigda may not be established by demonstrating that his employer, Ameriquest, is subject to jurisdiction under the Massachusetts long-arm statute.  See LaValle, 193 F.Supp.2d at 300, citing Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F.Supp. 1106, 1111 (D. Mass. 1983).  Plaintiff must establish, and the Court must determine, that there is an independent basis for jurisdiction over Bigda personally separate and apart from jurisdiction over Ameriquest.  Id.

As to Bigda, the Massachusetts long-arm statute provides, in relevant part,[1] that a Massachusetts court may exercise personal jurisdiction "over a person, who acts directly or by an agent, as to a cause of action in law of equity arising from the person's . . . (c) causing tortious injury by an act or omission in this commonwealth…" G.L. c. 223A, § 3(c).  The situation here is substantially the same as that at issue in LaVallee, supra, 193 F.Supp.2d 296.  In LaVallee, plaintiffs, in addition to suing corporate defendants, asserted business tort claims against an employee of the corporate defendant, Zaya Malik.  Id. at 298.  Malik moved to dismiss the suit

---

[1] Each of the claims against Bigda sounds in tort, not contract.

5

against him for lack of personal jurisdiction. Id. Malik argued that he should not be subject to jurisdiction in Massachusetts because his contacts with the forum were made solely in the scope of his employment by the corporate defendant and because he derived no personal benefit from his contacts in Massachusetts. Id. at 300.

The LaValle court determined that Malik could not be subject to jurisdiction in a Massachusetts court. Judge Gorton stated that even if the corporation is found to be subject to jurisdiction in Massachusetts, there must be an independent basis for jurisdiction over the officer or employee of the corporation. Id. at 300, citing Johnson, 573 F. Supp. at 1111. This "fiduciary shield" analysis requires a review of the particular facts of the case to examine the nature of the corporation and the individual employee or officer's relationship with it. Johnson, 573 F. Supp. at 1111. Judge Gorton noted that many employees, including "junior business associates" do not personally benefit from actions in a foreign forum and as such, do not act as a "primary participant" in the alleged wrongdoing. LaVallee, 193 F.Supp.2d at 302.

Even under agency principles, Judge Gorton found Malik's contacts with the Commonwealth to be insufficient to establish jurisdiction over Malik. Applying agency principles, courts "must consider whether [the employee] was more like a junior business associate or a 'primary participant' in the alleged wrongdoing in determining whether the personally committed a tort in the Commonwealth" pursuant to the long-arm statute. LaVallee, 193 F.Supp.2d at 302. Nevertheless, courts have disregarded the corporate form and the fiduciary shield doctrine only in cases where the individual defendant "1) was in the forum to serve personal interests, 2) was the alter-ego of the corporation or 3) had an identity of interest with the corporation itself (i.e., the corporation and the corporation's president)." LaVallee, 193 F.Supp.2d at 301 (citations omitted). Judge Gorton concluded that Malik did not act in the

6

forum to serve his personal interests, but rather acted solely as an agent of his employer and neither derived any personal benefit from his contacts in Massachusetts nor acted beyond the scope of his employment.  LaVallee, 193 F.Supp.2d at 302.

Judge Gorton thus utilizes both the language of the long-arm statute and the fiduciary shield doctrine to support his findings.  Indeed, footnote 2 suggests that Judge Gorton is actually not applying the fiduciary shield doctrine, but using it as further support to his analysis under the Massachusetts long arm statute.  LaVallee, 193 F.Supp.2d at 302 n. 2.  That is, he saying that because Malik was acting solely as an agent of his employer and derived no financial benefit, he did not personally cause tortious injury by an act or omission in Massachusetts.

The reasoning in LaValle applies with equal force here, and the Court should conclude that Bigda's actions, on behalf of Ameriquest, do not subject him to jurisdiction in the Commonwealth.  Indeed, Bigda is a junior business associate of Ameriquest.  He is simply the loan workout officer, assigned randomly to plaintiff's dispute after she lodged a complaint with Ameriquest's corporate offices in California arising out of her failed mortgage loan transaction with Ameriquest in April 2004.  See Bigda Decl. at ¶¶ 5, 7.  Although Bigda communicated with plaintiff's counsel through telephone and facsimile transmission in his attempts to resolve plaintiff's dispute with his employer, all communications were in response to plaintiff's request to resolve the failed funding of the April 2, 2004 loan.  See Bigda Decl. at ¶ 10.  Like in LaVallee, Bigda's "communications transmitted into Massachusetts were ancillary to the alleged offending…activities of" his employer.  LaVallee, 193 F.Supp.2d at 303.

Further, and independent of the fiduciary shield analysis in LaValle, plaintiff's claims against Bigda stem not from his action in the Commonwealth, but rather, his *inaction in California*.  Indeed, plaintiff declared the settlement "null and void" when Bigda allegedly did

not send documents from California to plaintiff's counsel in Massachusetts or call him in Massachusetts quickly enough.  Complaint at ¶ 49.  In short, Bigda's alleged failure to act in California cannot be the basis for asserting personal jurisdiction over him in Massachusetts. Moreover, like Malik in LaVallee, Bigda derived no personal benefits from his dealings with plaintiff in this matter, and nor did he personally form any contract with plaintiff.  At all times, Bigda was acting within the scope of his duties at Ameriquest in the attempt to resolve plaintiff's loan dispute in connection with her April 2, 2004 transaction.  See Bigda Decl. at ¶ 16.

Accordingly, plaintiff's claims should be dismissed against Bigda for lack of personal jurisdiction under the Massachusetts long-arm statute.  Further, because he is not subject to personal jurisdiction in the courts of the Commonwealth, the attempts to effect service upon Bigda in California were beyond the territorial limits of effective service set forth in Fed. R. Civ. P. 4(k), and the action against Bigda must be dismissed under Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process.

**II.     THE EXERCISE OF PERSONAL JURISDICTION OVER BIGDA WOULD VIOLATE THE DUE PROCESS CLAUSE UNDER THE MINIMUM CONTACTS ANALYSIS**

Even assuming for the sake of argument that plaintiff could establish personal jurisdiction over Bigda under the Massachusetts long-arm statute, plaintiff must further show sufficient minimum contacts between Bigda and the forum to satisfy the requirements of due process.  The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that there be sufficient minimum contacts between the defendant and the forum such that the exercise of personal jurisdiction over a defendant comports with traditional notions of fair play and substantial justice.  See LaVallee, 193 F.Supp.2d at 302 (citation omitted).

The First Circuit employs a three-part analysis to determine if sufficient contacts exist to exercise personal jurisdiction over a party. LaVallee, 193 F.Supp.2d at 303, citing Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998). See also Sawtelle v. Farrell, 70 F.3d 1381, 1389 (1st Cir. 1995); Phillips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). First, the claim underlying the litigation must directly rise out of, or relate to, the defendant's in-forum activity. Id. Second, the defendant's in-state contacts must represent a purposeful availment of the privileges of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Id. Third, the exercise of jurisdiction must, in light of certain "gestalt" factors, be reasonable. Id. All three tests must be satisfied to determine whether sufficient contacts exist.

Application of that three-part test to the facts presented here conclusively demonstrates that plaintiff cannot establish sufficient minimum contacts between Bigda and Massachusetts to satisfy due process requirements.

### A. Plaintiff's Claims Against Bigda Are Not Related To Any Activity By Bigda In Massachusetts

To satisfy the "relatedness" requirement, "the action must directly arise out of the specific contacts between defendant and the forum state." LaVallee, 193 F.Supp.2d at 303 (citation omitted). Defendant's in-state conduct must form an important or material element of proof in plaintiff's case. Phillips Exeter Academy, 196 F.3d at 289 (citation omitted). Further, there must be a causal nexus between defendant's Massachusetts contacts and plaintiff's claim or cause of action. LaVallee, 193 F.Supp.2d at 303. Contacts that do not relate to plaintiff's claims do not help plaintiff satisfy her burden to prove the relatedness element of the jurisdictional inquiry. Sawtelle, 70 F.3d at 1389.

9

Here, the few Massachusetts contacts alleged by plaintiff have no causal nexus to the alleged injury and conduct that form the basis of plaintiff's claims. Bigda had no role in the failed April 2004 transaction, and Bigda's actions in attempting to consummate an agreement after the April failed loan transaction with Ameriquest were universally terminated by plaintiff, when plaintiff's counsel determined that the negotiations were "null and void." See Complaint at ¶ 49. Thus, plaintiff complains about what Bigda *did not* do in California – sending information to Massachusetts – in attempt to facilitate the workout agreement. As discussed *infra*, plaintiff declared the settlement "null and void" when Bigda did not send documents to plaintiff counsel in Massachusetts quickly enough or call him quickly enough to satisfy him. In short, Bigda's alleged failure to act in California cannot be the basis for personal jurisdiction in Massachusetts.

Moreover, like LaValle, the gravamen of plaintiff's complaint is not Bigda's interaction with plaintiff's counsel, but the failed funding of the April 2, 2004 loan with which Bigda was not involved. See LaVallee, 193 F.Supp.2d at 303. Indeed, although the transmission of information into the forum state by way of telephone or mail is a contact for purposes of personal jurisdiction analysis, "it would be illogical to conclude that [Bigda's] isolated recommendations constituted the...conduct that caused the [Massachusetts] injury and thus were in-forum acts sufficient to establish specific personal jurisdiction" in Massachusetts. Sawtelle, 70 F.3d at 1390. Indeed, Bigda did not set foot in Massachusetts for any reason even tenuously related to the present cause of action. See Bigda Decl. at ¶ 12. As such, plaintiff's "showing of relatedness is thus quite strained, resting upon a vulnerable causal link." Sawtelle, 70 F.3d at 1390.

In sum, plaintiff cannot satisfy the "relatedness" requirement in the minimum contacts analysis. The Complaint therefore should be dismissed for lack of personal jurisdiction.

10

## B. Bigda Did Not Purposefully Avail Himself Of The Privilege Of Conducting Activities In Massachusetts And Thus It Was Not Foreseeable That Bigda Would Be Haled Into Court There

The function of the purposeful availment requirement is to ensure that personal jurisdiction is not premised solely upon the defendant's "random, isolated, or fortuitous" contacts with the forum state. Sawtelle, 70 F.3d at 1391. The purposeful availment analysis focuses on two concepts: voluntariness and foreseeability. Id.; LaVallee, 193 F.Supp.2d at 303.

Bigda's relationship with the Commonwealth is far too attenuated to warrant a conclusion that it was foreseeable that he might face suit in Massachusetts. Like LaVallee, Bigda's only contact with Massachusetts in connection with plaintiff were faxes and telephone communications with plaintiff's counsel in the forum in an attempt to work out a resolution of plaintiff's complaint about the failed April 20004 loan transaction. See Bigda Decl. at ¶¶ 9-10, 12. Plaintiff and plaintiff's counsel initiated the contact with Ameriquest in California to which Bigda responded on behalf of Ameriquest. See Bigda Decl. at ¶ 10; See also LaVallee, 193 F.Supp.2d at 304. Further, Bigda does not solicit business in Massachusetts and does not benefit from the laws or regulations of Massachusetts. See Bigda Decl. at ¶ 13. Again, Bigda was not involved in the April 2, 2004 loan transaction at issue between Ameriquest and plaintiff. See Bigda Decl. at ¶ 6. The mere fact that he responded on behalf of his employer to plaintiff's complaints directed into California concerning the disputed loan transaction, without more, does not subject him to jurisdiction in Massachusetts. Other than his response via phone and fax in response to plaintiff's counsel's requests, Bigda had no contact with Massachusetts. See Bigda Decl. at ¶ 12.

Likewise, the "foreseeability" requirement is not satisfied here. Bigda's alleged contacts with Massachusetts in his capacity as employee of Ameriquest did not make his being haled

11

personally into Massachusetts courts to personally defend this case foreseeable. See LaVallee, 193 F.Supp.2d at 304, 305 ("the record before this Court does not support a finding that [defendant] has an adequate connection with the Commonwealth to support the exercise of jurisdiction over him in the forum either under the long-arm statute or the Constitution.") Nothing about Bigda's conduct suggests that he might foresee being required to appear in a Massachusetts court to defend against a lawsuit arising from a failed loan transaction a few months prior. See Massachusetts School of Law, 142 F.3d at 36-37 (where defendant's contacts consisted of a telephone conversation, mailing a memorandum and a meeting in Boston of limited relevance, defendant could not have foreseen being haled into Massachusetts court to answer allegations of conspiracy); See Bigda Decl. at ¶ 18. Indeed, "the very exiguousness of these contacts suggests that [Bigda] could not reasonably have foreseen [his] susceptibility to suit in a [Massachusetts] court." Phillips Exeter, 196 F.3d at 292.

As Bigda's alleged contacts with Massachusetts were neither a voluntary acceptance of the benefits and protections of Massachusetts law, nor the kind of activity that made being haled into the Massachusetts courts reasonably foreseeable, the "purposeful availment" requirement of due process cannot be met.

    **C.    The Massachusetts Court's Exercise Of Jurisdiction Over Bigda Would Be Unfair And Unreasonable**

With respect to the third prong of the test, the Court must determine whether the exercise of personal jurisdiction over Bigda would "offend traditional notions of fair place and substantial justice." In so doing, the court looks to the "gestalt factors" to aid its determination. The gestalt factors are: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common

interests of all sovereigns in promoting substantive social policies.  See LaVallee, 193 F.Supp.2d at 304 (citations omitted).  In conducting minimum contacts analysis, courts consider this "'panoply of other factors which bear upon the fairness of subjecting a nonresident to the authority of a foreign tribunal.'"  United Electrical Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st. Cir. 1992).  The "gestalt" factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice.  Id.

First, the facts reveal that Bigda has *never* been to Massachusetts.  See Bigda Decl. at ¶ 12.  His only contact with Massachusetts in the instant case was through fax and telephone conversations responding to plaintiff's counsel.  See Bigda Decl. at ¶ 9.

Second, the burden on Bigda in defending himself in Massachusetts would be quite substantial.  Bigda would be forced to travel across the country with his witnesses to mount a defense 3,000 miles from where he lives and works.  Moreover, Bigda lacks the personal financial resources or the time to defend himself in Massachusetts.  See Bigda Decl. at ¶ 19.  Bigda's limited role in the scope of his employment with Ameriquest was not the kind of voluntary, independent action that would place Bigda on notice that he might have to defend himself in this forum, a continent away.

Third, although plaintiff has chosen Massachusetts as her forum, it is not the most convenient venue in which to try the case against Bigda.  Bigda, third-party witnesses, documents and other materials most relevant to the alleged issue of liability are all in California.

Finally, the fourth and fifth factors (the interest of the judicial system and the common interest of all sovereigns) weigh in favor of Bigda because the interest of the judicial system and public policy are best served by adjudicating disputes in the forum where the alleged activity occurred.  In this case, all the relevant activity insofar as it relates to the claims against Bigda

13

personally occurred in California.

Accordingly, as was the case with defendant Malik in the LaValle case, plaintiff here cannot satisfy the "minimum contacts" test.  The record before the Court shows that Bigda lacks an adequate connection with the Commonwealth to support the exercise of jurisdiction over him in the forum either under the long-arm statute or the Constitution.  As such, requiring Bigda to litigate in Massachusetts would violate notions of fair play and substantial justice.  The Court should therefore dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

Further, because Bigda is not subject to personal jurisdiction in the courts of the Commonwealth, attempted service of the summons and complaint upon him in California is beyond the territorial limits of effective service prescribed by Fed. R. Civ. P. 4(k).  Thus, plaintiff's Complaint against Bigda should also be dismissed pursuant to Rule 12(b)(5) for insufficiency of service of process.

## **CONCLUSION**

For the reasons stated above, Bigda respectfully requests that this Court dismiss plaintiff's Complaint against Bigda pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and for insufficiency of service of process.

Respectfully submitted,

BRADLEY JOSEPH BIGDA

By his attorneys,

/s/ Brian M. Forbes_____
R. Bruce Allensworth, BBO# 015820
    (ballensworth@klng.com)
Brian M. Forbes, BBO# 644787
    (bforbes@klng.com)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
75 State Street
Boston, Massachusetts 02109
(617) 261-3100

Dated: January 10, 2005

CERTIFICATE OF SERVICE

      I hereby certify that on January 10, 2005, I caused a copy of the foregoing document to be served by electronic filing and by first class United States mail, postage prepaid upon the following:

Jason David Fregeau, Esq.
47 Lincoln Road
Longmeadow, MA 01106
(413) 567-2461
jasonrissa@comcast.net

      /s/ Brian M. Forbes
      Brian M. Forbes