```
           IN THE UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
                    WESTERN DIVISION

SUSAN LAFOREST,                  :         No. 04-30195-MAP
          Plaintiff              :
                                 :
     v.                          :
                                 :
AMERIQUEST MORTGAGE COMPANY,     :
BRAD BIGDA,                      :
JOHN DOE 1,                      :
          Defendants             :
_____


  Plaintiff's Memorandum in Opposition to Defendant Bigda's Motion
                            to Dismiss
_____
```

A. Introduction

Pursuant to Massachusetts law and substantive due process, Defendant Bigda had sufficient contact with Massachusetts to support personal jurisdiction. Massachusetts courts have held that telephone, mail, and fax contacts -- including but not limited to those containing or constituting tortious acts -- are sufficient for personal jurisdiction under the Massachusetts long-arm statute. Moreover, given Defendant Bigda's job, Defendant had sufficient notice that his actions (and inactions) relating to mortgages on Massachusetts real estate could cause him to be haled into Massachusetts courts. Finally, as acknowledged in LaVallee,

Massachusetts state and federal courts have rejected the "fiduciary shield" doctrine. The Court should deny Defendant's motion to dismiss.

At the time of the actions in her complaint, Mrs. LaForest was the single mother of four with a fifth foster child. LaForest Aff., par. 2 (Mrs. LaForest remarried on October 9, 2004). Mrs. LaForest sought to have her home refinanced with Defendant Ameriquest, which already held the mortgage. Id., par. 3. In April 2004, all the loan papers were signed and the refinance was closed. Id., par. 4. Approximately two weeks later, Defendants Ameriquest and Doe called Mrs. LaForest to tell her that her home had not appraised for the amount they thought it would and that Defendant Ameriquest had unilaterally decided not to fund the loan to which it was bound by contract. Id., par. 5. Defendants never sent a written notice of adverse action. Id., par. 6.

Defendants' breach of contract left Mrs. LaForest in horrible financial straits. Id., par. 7. Defendants had agreed to fold two months of loan payments into the loan. Id. Now because of the breach, Mrs. LaForest was two loan payments behind -- $3595.30 -- on her home. Id. Defendants admit that, up until this time, Mrs. LaForest had never been late on her home payments. Answer, par. 30; see Complaint, par. 30; see also LaForest Aff., par. 8. Defendants reported Mrs. LaForest's loan payments as late on her

credit history. LaForest Aff., par. 9. This negative report impeded -- and continues to impede -- Mrs. LaForest's ability to refinance her home. Id.

Defendant Ameriquest began calling Mrs. LaForest to collect on the mortgage payments. Id., par. 10. Mrs. LaForest engaged counsel in May 2004 to handle the matter. Id., par. 11. Defendant Bigda entered the picture on June 11, 2004. Id., par. 12. Negotiations with Defendants continued, including the July 21 & 28 facsimile letters from Defendant Bigda attached to the Complaint. Id. Notably, on July 28, Defendants admitted that Defendant Ameriquest could not have legally "terminated" the refinance contract. Id., par. 13; see also Complaint, par. 26. A settlement agreement was reached on July 30. Id., par. 14; see Letter to B.Bigda (July 30, 2004) (attached to Complaint).

For the next two months, Defendants -- through Defendant Bigda -- promised the consummation of the settlement. LaForest Aff., par. 15. The following is a list of contacts and attempted contacts with Defendant Bigda:
- Aug 16: left message;
- Aug 23: telephone conference;
- Sep 7: left message;
- Sep 14: Defendants demanded an account stated letter signed by Mrs. LaForest and her counsel;

- Sep 15: Defendants dropped demand for account stated letter;
- Sep 15: Defendant Bigda had preliminary loan documents sent directly to Mrs. LaForest;
- Sep 17: left message;
- Sep 20: left message;
- Sep 23: left message for B.Bigda;
- Sep 23: left message for B.Bigda's supervisor;
- Sep 27: letter to B.Bigda (attached to Complaint);
- Sep 28: telephone conference with B.Bigda & Complaint filed;
- Undated letter from B.Bigda sent _directly_ to Mrs. LaForest and received about October 4;[1]
- Oct 12: Defendant Bigda had preliminary loan documents sent directly to Mrs. LaForest;
- Nov 5: Defendant Bigda had a notification of incompleteness sent directly to Mrs. LaForest.

---

[1] Copies of the letter and the FedEx envelope have not yet been filed. Mrs. LaForest's counsel does not have a scanner, so copies of the letter and envelope will be mailed to the clerk for filing.

Id., par. 15; see also Bigda Declaration, pars. 8-9.[2]

Mrs. LaForest relied to her detriment upon Defendant Bigda's knowing misrepresentations that a settlement agreement had been reached. Id., par. 16. Mrs. LaForest held off payments to Defendant Ameriquest based upon Defendant Bigda's knowing misrepresentations, causing further harm to her credit history. Id., par. 17. Because of Defendant's knowing misrepresentations, when Mrs. LaForest finally determined that Defendants were no longer interested in the settlement to which they had agreed, she felt that her home was in danger of foreclosure. Id.

Mrs. LaForest, not her attorney, made the decision to consider the settlement null and void and to file suit. Id., par. 18. Mrs. LaForest was personally convinced that Defendants had no intention of following through on the agreed refinancing of her home. Id. Indeed, Defendants have made no effort to settle this matter, which underscores the fact that Defendants had no intention of

---

[2] Defendant implies that discussions with Mrs. LaForest's attorney, as opposed to Mrs. LaForest directly, makes a difference in regard to personal jurisdiction. Defendant's Motion, p. 3. An attorney, however, is an agent for his client and any contact with an attorney is considered contact with the client. Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 93 (1990).

ever following through on the settlement. Id.

This Memorandum first will show that there is personal jurisdiction over Defendant Bigda pursuant to the Massachusetts long-arm statute. Second, this Memorandum will show that there are minimum contacts to hale Defendant Bigda into the courts of Massachusetts. Third, this Memorandum will show that the "fiduciary shield" doctrine is inapplicable. Finally, this Memorandum will show that Defendant Bigda was properly served pursuant to Federal Rule of Civil Procedure 4 and M.G.L. ch. 223A ss. 6-8.

### B. Defendant Bigda is Subject to Personal Jurisdiction under the Massachusetts Long-arm Statute

Defendant argues long and hard that he is not subject to long-arm jurisdiction based upon his telephone calls, letters, and facsimiles. Defendant's Motion, pp. 4-8. Massachusetts courts, however, have held that physical presence in Massachusetts is not a prerequisite to personal jurisdiction and have found that interstate calls, faxes, and letters are sufficient contact under the Massachusetts long-arm statute.

Massachusetts law does not limit personal jurisdiction, but allows personal jurisdiction "to the limits allowed by the Constitution of the United States." Good Hope Indus., Inc. v.

Ryder Scott Co., 378 Mass. 1, 6 (1979). The statute grants personal jurisdiction not only over tortfeasors, (Section 3(c)), but also over persons "transacting any business in this commonwealth" (Section 3(a)). The Massachusetts Supreme Judicial Court interprets Section 3(a) broadly. Tatro v. Manor Care, Inc., 416 Mass. 763, 767; 625 N.E.2d 549, 551 (1994). The facts must be viewed in a light most favorable to the plaintiff. Id. at 765/550.

Under Section 3(a), "transacting business" in Massachusetts includes telephone calls, facsimiles, and mail sent from out of state. LaVallee v. Parrot-Ice Drink Prod. of Am., Inc., 193 F. Supp. 2d 296, 300 (D. Mass. 2002); Clinton Paper Company, Inc. v. Stimmel, No. 92-11418-NG, 1994 U.S. Dist. Lexis 8798 at *6-10 (D. Mass. June 20, 1994) (Young, J; collecting cases; attached). The inquiry is not whether the plaintiff or the defendant initiated the communications, but rather whether the defendant's contacts were deliberate and not fortuitous. Clinton paper, 1994 U.S. Dist. Lexis 8798 at *9. The contacts do not need to be business oriented. Ross v. Ross, 371 Mass. 439, 441; 358 N.E.2d 437, 439 (1976). Accord Nile v. Nile, 432 Mass. 390, 396; 734 N.E.2d 1153, 1158 (2000). Even slight or isolated contact can be viewed as "transacting business" in Massachusetts for purposes of the long-arm statute. Principal Mut. Life Ins. Co. v. Glick, No. 94-0296, 1994 Mass. Super. Lexis 15 at *4-5 (Dec. 14, 1994) (attached).

Likewise, under Section 3(c), the transmission of fraudulent misrepresentations into Massachusetts is considered an act within the Commonwealth. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972). In Kleinerman v. United States Postal Service, the trial court found that Section 3(c) conferred jurisdiction over individual employees who transmitted fraudulent misrepresentations into the state. No. 82-0039-F, 1985 U.S. Dist. Lexis 13017 at *5-7 (D. Mass. Dec, 9, 1985) (Freedman, J.; attached).

Defendant Bigda "transacted business" in Massachusetts pursuant to Section 3(a). Defendant had at least four telephone conversations, sent two facsimiles, and sent three mailings. See LaForest Aff., par. 15. Accord Bigda Declaration, par. 8-9. Defendant's contacts with Massachusetts concerned Mrs. LaForest's Massachusetts home. Bigda Declaration, par. 10. Defendant Bigda's contacts were deliberate -- knowingly and voluntarily made into the Commonwealth -- and were not fortuitous. Moreover, Mrs. LaForest's claims not only arise from Defendant's communications, but also are based directly upon Defendant Bigda's knowing misrepresentations.

The facts of Haddad v. Taylor are on all fours with this case. 32 Mass. App. Ct. 332; 588 N.E.2d 1375 (1992). In Haddad, a New York State attorney negotiated the sale of real estate in

Massachusetts. Id., p. 333-34/1376. The Massachusetts Court of Appeals held that, even though the attorney was acting as an agent, was not physically present in Massachusetts, and was unable to negotiate a binding contract, the Massachusetts courts would have personal jurisdiction over the defendant attorney. Id., p. 335/1377. The Court of Appeals held that the defendant's deliberate contacts with Massachusetts regarding real estate in Massachusetts were dispositive. Id., p. 336/1377.

Defendant, acting as agent for Defendant Ameriquest and deliberately participating in communications with Massachusetts counsel, could reasonably foresee being haled into Massachusetts courts regarding real estate mortgages in Massachusetts. Consequently, there is personal jurisdiction over Defendant Bigda under Section 3(a).

Likewise, Defendant Bigda sent fraudulent misrepresentations into Massachusetts. See, e.g., Complaint, Count VIII (Fraud). Defendant knowingly misrepresented that Defendant Ameriquest was interested in settlement of Mrs. LaForest's claims stemming from Defendant Ameriquest's breach of contract and knowingly misrepresented for at least two months that consummation of the settlement was imminent. LaForest Aff., par. 15. Mrs. LaForest reasonably relied upon these knowing misrepresentations to her detriment. Id., pars. 16-17. Consequently, there is personal

jurisdiction over Defendant Bigda under Section 3(c).

### C. Defendant Bigda is Subject to Personal Jurisdiction under Substantive Due Process

Defendant is correct that, even though there is personal jurisdiction under the literal reading of M.G.L. ch. 223A s. 3, the Court must determine whether there is personal jurisdiction pursuant to substantive due process under the United States Constitution. See Tatro, 416 Mass. at 767; 625 N.E.2d at 551.

As acknowledged by Defendant, the inquiry into minimum contacts consists of three elements: relatedness, purposeful availment (also known as "minimum contacts"), and "gestalt" factors. Each will be addressed in turn.

### 1. Relatedness

There is no dispute that, for specific jurisdiction, "Defendant's in-state conduct must form an important or material element in plaintiff's case." Defendant's Motion, p. 9 (citing Philips Exeter Academy v. Howard Phillips Fund, Inc., 196 F.3d 284, 289 (1st Cir. 1999)). Defendant acknowledges that his telephone, mail, and facsimile communications constitute "contact for purposes of personal jurisdiction analysis...." Defendant's

Motion, p. 10.[3]

Mrs. LaForest alleges that Defendant made knowing misrepresentations regarding settlement. Complaint, par. 81. While these knowing misrepresentations grew out of Defendant Ameriquest's original refusal to fund the binding contract, these knowing misrepresentations form an independent basis for Mrs. LaForest's allegations regarding Defendant Bigda's tortious conduct. To put it colloquially, Defendant Ameriquest screwed up by not funding the loan, then Defendant Bigda, on behalf of Defendant Ameriquest, screwed up by lying about settlement. Each is an independent basis for Mrs. LaForest's claims.

---

[3] In fact, there may be general jurisdiction over Defendant Bigda. Defendant does _not_ aver that his contacts with Massachusetts have been limited to those regarding Mrs. LaForest. See generally Bigda Declaration. Similarly, Defendant states in his motion, "Bigda's only contact with Massachusetts _in connection with plaintiff_..." were faxes, letters, and calls. Defendant's Motion, p. 11 (emphasis added). Since Defendant Ameriquest is registered with the Massachusetts Secretary of State and admits that "it has originated and funded residential mortgage loans in Massachusetts", (Answer, par. 6), the Court can make the fair inference that Defendant Bigda has had other communications concerning real estate in the Commonwealth.

## 2. Purposeful Availment

The parties agree that the purposeful availment requirement is further broken down into foreseeability and voluntariness. See Defendant's Motion, p. 11. Defendant argues that, "Nothing about Bigda's conduct suggests that he might foresee being required to appear in a Massachusetts court to defend against a lawsuit arising from a failed loan transaction...." Defendant's Motion, p. 12. The nature of Defendant's job, however, gives Defendant sufficient notice that he could be haled into court in Massachusetts and other states.

In Shipley Co. v. Clark, the trial court held that the nature of the contract, employment in Massachusetts, placed the individual defendants on notice that they could be haled into Massachusetts courts. 728 F. Supp. 818, 822 (D. Mass. 1990). In the current case, Defendant is a "mortgage loan workout specialist." Defendant's Declaration, par. 3. Defendant Ameriquest is a Delaware corporation with its principle place of business in Orange, California. Complaint, par. 4; Answer, par. 4 (admitted). Defendant Bigda made calls, wrote letters, and sent facsimiles to Massachusetts to work out the mortgage loan on Massachusetts real estate. Defendant's Motion, p. 11. Given the nature of Defendant's job, the nature of Defendant Ameriquest's business, and the fact that the real estate was situated in Massachusetts, Defendant should have foreseen the possibility of his being haled into

Massachusetts courts.

In addition, the First Circuit has held that the sending of a fraudulent misrepresentation into Massachusetts fulfills the "purposeful availment" requirement. Murphy, 460 F.2d at 664. "[T]here is no constitutional problem in basing jurisdiction upon a single, isolated tort committed by a foreign defendant in Massachusetts against a Massachusetts resident." JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 98 (D. Mass. 1999) (citing The Ealing Corporation v. Harrods Limited, 790 F.2d 978, 983 (1st Cir. 1986)). As discussed above, Defendant Bigda transmitted knowing misrepresentations into Massachusetts, fulfilling the purposeful availment requirement.

### 3. Gestalt Factors

The parties agree that the Court must weigh five additional "gestalt" factors: the burden on Defendant, the interests of the forum state, the interests of Plaintiff, judicial economy, and social policy. See Defendant's Motion, pp. 12-13.

Defendant argues that he should not be subject to personal jurisdiction because (1) he has never "set foot" in Massachusetts, (2) Defendant would have to travel 3000 miles and "lacks the personal financial resources or the time to defend himself in Massachusetts", (3) all the documents and witnesses allegedly are

in California, and (4) the judicial system and public policy are "best served by adjudicating the disputes in the forum where the alleged activity occurred". Id., p. 12.

As for Defendant's presence in Massachusetts, that is not considered under the gestalt factors and, where it is properly considered, Defendant's contacts with Massachusetts are legally sufficient to confer "presence". In regard to the "burden" on Defendant, Defendant does not allege that he has to pay for his defense -- Defendant Ameriquest and Defendant Bigda currently have the same defense counsel. Moreover, while the forum is far from Defendant's home, Defendant has not demonstrated any special or unusual hardship. See Back Bay Farm, LLC v. Collucio, 230 F. Supp. 2d 176, 187 (D. Mass. 2002) (Neiman, J.). In regard to the location of documents and witnesses, in this age of photocopy, scanners, and e-mail, the physical location of original documents is irrelevant. In regard to witnesses, Mrs. LaForest lives in the forum, which goes to factor three and is a wash in regard to Defendant's presence. As for third party witnesses, just who might be a witness, e.g. witnesses to the distress caused to Mrs. LaForest by the endangerment of the home for her children, is at this point speculative. Finally, as to the forum where the activity occurred, as a matter of law the conduct occurred in Massachusetts.

Not surprisingly, the factors that Defendant does not address weigh heavily in Mrs. LaForest's favor. Massachusetts has an interest in adjudicating disputes concerning Chapter 93A as well as real estate located in the Commonwealth. If Defendant Bigda is dismissed from the current suit, then Mrs. LaForest will have to bring a second, parallel suit in California. Such duplication not only threatens the possibility of inconsistent verdicts, but also is a waste of judicial resources. Finally, there is no particularly special "social impact" in this case. Considering these gestalt factors, there is no good reason why this litigation should not go forward in a single case in the Federal District Court for the District of Massachusetts.

### D. Defendant Bigda cannot Invoke the Fiduciary Shield Doctrine

Mixed in with his arguments concerning the reach of the Massachusetts long-arm statute, Defendant Bigda argues that the Court should apply the fiduciary shield doctrine. Defendant's Motion, pp. 4-8. LaVallee excepted, no court in Massachusetts has adopted the fiduciary shield doctrine. The Court should not break new ground and apply a doctrine that has been roundly rejected by the courts of Massachusetts.

No Massachusetts court, state or federal, has adopted the fiduciary shield doctrine. Interface Group-Massachusetts, LLC. v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003); LaVallee, 193 F.

page 15

Supp.2d at 302; Trans Nat'l Travel, Inc. v. Sun Pacific Int'l, Inc., 10 F. Supp. 2d 79, 83 (D. Mass. 1998); Shipley Co., 728 F. Supp. at 821; Yankee Group, Inc. v. Yamashita, 678 F. Supp. 20, 22 (D. Mass. 1988); Putnam v. Adams Comm. Corp., No. 84-0355-S, 1987 U.S. Dist. Lexis 5768 at *28 (D. Mass. June 15, 1987) (attached); Salvador v. Meese, 641 F. Supp. 1409, 1415 (D. Mass. 1986); Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111-12 (D. Mass. 1983); DSM Thermoplastic Elastomers, Inc. v. McKenna, No. 00-2018B, 2002 Mass. Super. Lexis 102 at *10 n.3 (Feb. 5, 2002) (attached); Tufts Electronics Group, Inc. v. AFP Imaging Corp., No. 95-7407, 1998 Mass. Super. Lexis 120 at *6 (1998) (attached); Principal Mut. Life Ins. Co., 1994 Mass. Super. Lexis at *8.

> "Moreover, it is unlikely that Massachusetts would adopt such a limitation in view of the fact that its long-arm statute is intended to reach the limits of the United States Constitution. If the statute is intended to reach as far as constitutionally permissible, it would be inconsistent to hold that the commonwealth would recognize a limitation not required by the Constitution."

Yankee Group, Inc., 678 F. Supp. at 22 (citation omitted). Accord Trans Nat'l Travel, Inc., 10 F. Supp. 2d at 83.

The only Massachusetts case that might be construed to apply the doctrine would be LaVallee; however, even Defendant admits that

the trial court in LaVallee did not adopt the doctrine, but merely used the doctrine "as further support to [the court's] analysis under the Massachusetts long arm statute." Defendant's Motion, p. 7. Moreover, LaVallee misapplies the doctrine to employees (as does Defendant), when the doctrine actually applies to officers and directors acting as conduits for the actions of the corporation. See Johnson Creative Arts, Inc., 573 F. Supp. at 1111 ("in his capacity as a corporate fiduciary"). Nothing in the doctrine is meant to insulate an employee from his own tortious or business conduct directed toward the forum, even if the actions were taken within the course of his employment. LaVallee, 193 F. Supp.2d. at 302 n.2; cf. Salvador v. Meese, 641 F. Supp. 1409, 1415 (D. Mass. 1986) ("Rather than being a mere conduit through which his employer acted in Massachusetts, Propper is alleged to have intentionally misrepresented facts to Massachusetts investors, thereby purposefully injecting himself into this forum.")

The Court should decline to apply the fiduciary shield doctrine. Defendant made knowing misrepresentations to Mrs. LaForest. Defendant also transacted business in the Commonwealth, conduct upon which Mrs. LaForest's claims arise. Defendant Bigda is culpable for his own actions, even if they were taken on behalf of his employer. The Court should deny Defendant's motion to dismiss.

### E. Defendant Bigda was Properly Served

Defendant Bigda makes the circular argument that, since there allegedly is no personal jurisdiction, then he was improperly served. Defendant's Motion, pp. 8, 14. Defendant <u>does not</u> argue that, if there is personal jurisdiction, then he was improperly served. In other words, Defendant does not contest the actual service that he received.

On October 7, 2004, Defendants received via certified mail, return receipt requested, requests for waiver of service of summons, which Defendants ignored. Defendants were then personally served on November 30 and December 6, 2004, as noted by the affidavits of the process server. <u>See</u> Returns of Service (Docs 2 & 3). Defendants timely responded to this service, so there is no dispute that Defendants received actual notice. Consequently, Defendants were properly served under Rule 4 and M.G.L. ch. 223A ss. 7-8.

### F. Conclusion

For the reasons stated above, the Court should deny Defendant Bigda's motion to dismiss.

        Respectfully submitted,

        /s/ Jason David Fregeau


        Jason David Fregeau,
        Trial Attorney (0055426)

        47 Lincoln Road
        Longmeadow, MA 01106
        413/567-2461
        413/567-2932 fax

        Attorney for Plaintiff


## Certificate of Service

  I certify that a copy of the foregoing Plaintiff's Memorandum in Opposition to Defendant Bigda's Motion to Dismiss has been served by electronic filing upon R. Bruce Allnesworth, 75 State Street, Boston, MA 02109, this 26th day of January, 2005.

        /s/ Jason David Fregeau
        _____
        Jason David Fregeau, Esq.