*1987 U.S. Dist. LEXIS 5768, **

William L. Putnam and Kathryn F. Broman, Plaintiffs, v. Adams Communication Corporation, Stephen Adams, Hartstone & Dickstein, Inc., Barry J. Dickstein, and Paul J. Brissette, Defendants

Civil Action No. 84-0355-S

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

1987 U.S. Dist. LEXIS 5768

June 15, 1987, Decided

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, company and its owner, filed a motion to dismiss plaintiff consultants' second amended complaint to recover damages from them for wrongful termination of the consultants' employment.

**OVERVIEW:** The consultants held pivotal positions within a television company, which sold its broadcast stations to the owner of a communications company. The consultants claimed that the owner promised to retain them after the sale in comparable executive positions. After the sale they were hired as consultants, but shortly thereafter dismissed. The consultants filed suit, evidenced by a 32 count second amended complaint. The suit alleged claims involving: Racketeering Influenced Corrupt Organizations (RICO) Act, 18 U.S.C.S. §§ 1961 et seq.; state law; and the state civil rights act. In response, they moved for dismissal. The court found that while the consultants alleged separate racketeering acts, they failed to allege that the owner and his companies engaged in a pattern of racketeering activity. Also, the court held that the subsidiaries, although major actors in the events, were not necessary parties for the purposes of Fed. R. Civ. P. 19(a). Further, the court concluded that in executing and performing the consulting contract, the parties were not dealing as independent business persons and hence, the consultants were not entitled to maintain suit under Mass. Gen. Laws ch. 93A.

**OUTCOME:** The court granted the company and its owner's motion to dismiss counts I-IV, XVIII, XIX, XX, X, XXVI, VIII, IX, XXIV, and XXV. However, it denied their motion as to counts XI and XXVII; Counts VII and XXIII (deceit); and counts V and XXI (MA Civil Rights Act). Their motions to join necessary parties, dismissal for failure to comply with Rules 8, 9 and 10, lack of jurisdiction, and improper venue, were also denied.

**CORE TERMS:** subsidiary, motion to dismiss, conspiracy, consulting, station, First Amendment, pattern of racketeering activity, fiduciary, exceptional circumstances, intentional infliction of emotional distress, wholly owned, venue, deceit, racketeering activity, shield, arm, necessary parties, color of state law, transferred, assisting, joinder, impair, television, purport, firing, join, employment relationship, employment contract, ability to protect, independent tort

**LexisNexis(R) Headnotes**

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss
**HN1** In ruling on a motion to dismiss, the court must accept as true all material allegations in the complaint.

Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations
**HN2** To state a claim under Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.S. §§ 1961 et seq., plaintiffs must show that defendants engaged in a "pattern of racketeering activity." Congress did not define what constitutes a "pattern of racketeering activity"; instead, it provided that a pattern of racketeering activity requires at least two acts of racketeering activity. 18 U.S.C.S. § 1961(5). As the Supreme Court has pointed out, this definition provides only the necessary condition of a pattern, and it does not imply that any two acts of racketeering activity will be sufficient to form a pattern. The statute leaves to the courts the task of determining what constitutes a pattern of racketeering activity.

Criminal Law & Procedure > Criminal Offenses > Racketeering > Racketeer Influenced & Corrupt Organizations

HN3 The target of Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.S. §§ 1961 et seq., is not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern. Thus, a pattern of racketeering activity will exist only if a defendant's racketeering activities are to some extent continuous.

Criminal Law & Procedure > Criminal Offenses > Racketeering

HN4 To determine if a defendants' activities are continuous, the court must look at a number of factors, including: (1) the number of independent victims of the alleged activity; (2) the number of participants in the alleged crime; (3) the purpose of the activity; (4) the result of the activity: (5) the method of commission; (6) the number of transactions; (7) whether the scheme is ongoing and open-ended; and (8) the duration of the activity.

Civil Procedure > Joinder of Claims & Parties > Joinder of Necessary Parties

HN5 Fed. R. Civ. P. 19 provides for the joinder to a suit of parties needed for its just adjudication. The Rule establishes a two part test for determining whether a party should be joined in pending litigation. If a party falls into any of three categories set forth in Rule 19(a), the potential party is necessary and shall be joined as a party if joinder is feasible. If joinder of such a necessary party is not feasible, Rule 19(b) provides that a court must determine whether in equity and good conscience the suit should go forward without the necessary party.

Civil Procedure > Joinder of Claims & Parties > Joinder of Necessary Parties

HN6 Fed. R. Civ. P. 19(a) provides that a person is a necessary party only if: (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. Fed. R. Civ. P. 19(a).

Antitrust & Trade Law > State Trade Regulation

HN7 Disputes arising out of the employment relationship between an employer and an employee are not cognizable under Mass. Gen. Laws ch. 93A.

Constitutional Law > Civil Rights Enforcement > Private Discrimination

HN8 The Massachusetts legislature intended that the civil rights statute, Mass. Gen. Laws ch. 12, § 11I, cover the same federal rights protected by 42 U.S.C.S. § 1983, with the difference that the Massachusetts statute apply to private conduct, as well as conduct under color of state law.

Torts > Multiple Defendants > Conspiracy

HN9 To state a claim for conspiracy, plaintiffs must allege more than mere joint tortious activity by the defendants; they must allege: (1) the combination of two or more persons to accomplish an unlawful purpose, or a purpose not unlawful by unlawful means, and (2) some peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation to the plaintiff would not have had .

Torts > Multiple Defendants > Conspiracy

HN10 There can be no independent tort for conspiracy unless in a situation where mere force of numbers acting in unison or other exceptional circumstances may make a wrong. And in order to prove an independent tort for conspiracy upon the basis of mere force of numbers acting in unison it must be shown that there was some peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in a like relation to the plaintiff would have had.

Torts > Multiple Defendants > Conspiracy

HN11 The Massachusetts courts have left open the possibility that a plaintiff may state a claim for true conspiracy in "exceptional circumstances." However, the Supreme Judicial Court has made clear that exceptional circumstances are rare and should be added to with caution.

Torts > Multiple Defendants > Conspiracy

HN12 Where the allegations of conspiracy add nothing to the underlying tort allegations, the courts have repeatedly held that the gist of such an action is not the conspiracy alleged, but the tort committed against the plaintiff.

Torts > Intentional Torts > Intentional Infliction of Emotional Distress

HN13 A single instance of outrageous conduct may be sufficient to state a claim for intentional infliction of emotional distress.

Business & Corporate Entities > Agency > Agents Distinguished

HN14 The fiduciary shield doctrine holds that acts performed by a person in his capacity as a corporate fiduciary may not form the predicate for the exercise of jurisdiction over him in his individual capacity.

**OPINIONBY:** [*1]

SKINNER

**OPINION:** MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

SKINNER, D.J.

This suit arises out of the sale of three television stations by Springfield Television Corporation ("STV") to Adams Communication Corporation ("ACC"). Plaintiff William L. Putnam was the chairman of the board and owner of one-third of the voting stock of STV. Plaintiff Kathryn F. Broman was the president of STV. STV, a Massachusetts corporation, owned and operated three television broadcast stations, WWLP in Springfield, Massachusetts, WKEF in Dayton, Ohio and KTSU in Salt Lake City, Utah. In July 1983, defendant Stephen Adams, the chief executive officer and sole shareholder of defendant ACC, offered, on behalf of ACC, to purchase STV's television stations. On March 1, 1984, STV sold the three television broadcast stations to wholly owned subsidiaries of ACC for $ 47.3 million. Plaintiffs claim that defendant Adams promised to retain them after the sale in executive positions comparable to those they occupied at STV. Instead, once the sale was completed, they were removed from their positions and offered consulting positions. Plaintiffs agreed to work for ACC and its subsidiaries **[*2]** as consultants, but shortly thereafter they were dismissed altogether. Plaintiffs bring this suit to recover damages allegedly caused by Adams' breach of promise and wrongful termination of their employment.

Defendants move to dismiss the plaintiffs' second amended complaint. HN1 In ruling on defendants' motion, I must accept as true all material allegations in the complaint. Williams v. City of Boston, 784 F.2d 430, 433 (1st Cir. 1986). Plaintiffs allege the following. In mid-July, 1983, defendants Adams and ACC, with the assistance of defendants Hartstone & Dickstein, Inc. ("H&D") and Barry J. Dickstein, president of H&D, offered to purchase substantially all the assets of STV. Between that date and March 1, 1984, when STV transferred the three television stations to ACC's subsidiaries, STV and ACC engaged in extensive negotiations, including frequent mail and wire communications and face-to-face meetings in various states. Adams knew that because of Putnam's control over more than one-third of STV's voting stock, and his and Broman's influential positions within the corporation, no sale could occur without their support. Therefore, throughout the period between July, 1983 and March **[*3]** 1, 1984, Adams, on behalf of ACC and its subsidiaries, repeatedly assured Putnam and Broman of his intention to employ them in executive positions after the transfer of assets was completed. In addition, on August 24, 1983, Adams agreed to assume STV's duties to Putnam and Broman under existing Retirement Benefit Agreements. Despite Adams' representations that he intended to continue to employ Putnam and Broman, plaintiffs allege that Adams had no intention to do so and was promising them continued employment solely as a means of procuring the assets of STV.

Putnam and Broman relied upon Adams' representations and supported the sale of assets to ACC. On July 27, 1983, the Board of Directors of STV approved the sale in principle, and on August 24 the Board voted to approve an Asset Purchase Agreement. The shareholders of STV on September 12 voted unanimously to authorize the sale. Throughout this period, Adams continued to represent that he would employ Putnam and Broman in their executive positions until they retired. On February 2, 1984, Adams agreed to a Table of Organization

in which Putnam and Broman occupied the number two and number three spots in the new management organization, **[*4]** behind only Adams.

STV transferred the television stations to ACC on March 1, 1984. The Springfield station was transferred to Adams TV of Springfield, Inc. ("ATV of S"), the Dayton station to Adams TV of Dayton, Inc. ("ATV of D") and the Salt Lake City station to Adams TV of Salt Lake City, Inc. ("ATV of SL"), each of which was a wholly owned subsidiary of ACC. Later that same day, Adams informed Putnam and Broman that he would not retain them as executive employees. Instead, they would be retained only as consultants. After protesting this change, Putnam and Broman agreed to accept the consulting positions. On April 26, 1984, an attorney retained by Putnam and Broman sent a letter to counsel for ACC and ATV of S regarding plaintiffs' employment status. Adams responded by terminating the consulting contracts on the grounds that plaintiffs had violated ACC policy by retaining an attorney to press claims against the corporation. Plaintiffs had no knowledge of any such policy.

Plaintiffs filed a 35 count complaint in the United States District Court for the District of Massachusetts, Western Division, on September 11, 1984. In response to defendants' motion to dismiss this complaint, **[*5]** plaintiffs filed a 35 count first amended complaint on November 13, 1984. Defendants again moved to dismiss the complaint, and on April 1, 1986, plaintiffs filed a 32 count second amended complaint. The original judge then recused himself from the case due to a conflict of interest, and the case was transferred to me. I now consider defendants' motion to dismiss plaintiffs' second amended complaint.

The RICO Claims

In Counts I, II, III, IV, XVII, XVIII, XIX, and XX of the second amended complaint, plaintiffs allege that defendants conspired to violate and did violate the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. §§ 1962(b) and (c) ("RICO"). **HN2** To state a claim under RICO, plaintiffs must show that defendants engaged in a "pattern of racketeering activity." Id.; Sedima, S.P.R.L. v. Imrex Company, Inc., 473 U.S. 479, 105 S.Ct. 3275, 3285 (1985). Congress did not define what constitutes a "pattern of racketeering activity"; instead, it provided that "a pattern of racketeering activity requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). As the Supreme Court has pointed out, this definition provides only the necessary condition of a pattern, **[*6]** and it does not imply that any two acts of racketeering activity will be sufficient to form a pattern. Sedima, 105 S.Ct. at 3285, n.14; see also Roeder v. Alpha Industries, Inc., 814 F.2d 22, 30-1 (1st Cir. 1987). The statute leaves to the courts the task of determining what constitutes a pattern of racketeering activity.

To determine whether a pattern of racketeering activity exists under RICO, I must focus on the continuity of defendant's criminal actions. See Roberts v. Smith Barney, Harris Upham & Co., Inc., 653 F. Supp. 406, 409-413 (D. Mass. 1986) (discussing cases and legislative history). As the Senate Report on RICO made clear:

**HN3** The target of RICO is . . . not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" and the threat of continuing activity to be effective. It is this factor of continuity plus relationship which combines to produce a pattern.

S.Rep. 91-617, 91st Cong. 1st Sess. 158 (quoted in Sedima, 105 S.Ct. at 3285 n.14). Thus, a pattern of racketeering activity will exist only if a defendant's racketeering activities are to some extent continuous. Sedima, 105 S.Ct. at 3285 n.14. **[*7]**

Since most business transactions involve multiple telephone calls, mailings and other acts that may constitute individual acts of racketeering activity, that defendants engaged in numerous such acts does not by itself prove the existence of a pattern. See Roeder, 814 F.2d at 30. Rather, **HN4** to determine if defendants' activities were continuous, I must look at a number of factors, including: (1) the number of independent victims of the alleged activity; (2) the number of participants in the alleged crime; (3) the purpose of the activity; (4) the result of the activity: (5) the method of commission; (6) the number of transactions; (7) whether the scheme is ongoing and open-ended; and (8) the duration of the activity. See Roberts, 635 F. Supp. at 409-413. Application of these factors to this case indicates that defendants' alleged activities were not so continuous as to constitute a pattern.

Plaintiffs allege that defendants engaged in more than one dozen acts of racketeering activity spread over nine months. The number of alleged acts and duration of the alleged illegal activity say more about the nature of modern business deals, however, than about the ongoing nature of defendants' **[*8]** alleged illegal activity. See Roeder, 814 F.2d at 30. All of these acts were part of a single transaction. The only alleged victims were the two plaintiffs. The only alleged participants in the crime were Adams, his wholly owned corporations, and his financial adviser. The purpose and result of the alleged illegal activity was a single sale of assets. The method of commission was a single business deal. And the alleged plan was not open-ended; it had a single transaction as its sole end. In essence, plaintiffs allege only that defendants committed fraud in a single business transaction. While plaintiffs allege separate racketeering acts, they fail to allege that defendants engaged in a pattern of racketeering activity.

Accordingly, defendants' motion to dismiss plaintiffs' RICO claims (Counts I, II, III, IV, XVII, XVIII, XIX and XX of the second amended complaint) is ALLOWED.

ATV of S as an Indispensable Party

Plaintiffs' initial complaint named ATV of S as a defendant. In their motion to dismiss that complaint, defendants contended that because ATV of S has a principal place of business in Massachusetts and plaintiffs reside in Massachusetts, the court could not exercise **[*9]** jurisdiction over the case based on diversity of citizenship. Plaintiffs subsequently dropped ATV of S from their amended complaint. Defendants now contend that I should dismiss the remaining counts of plaintiffs' second amended complaint because ATV of S is an indispensable party whose joinder destroys complete diversity of citizenship among the Parties and deprives me of jurisdiction over this case.

**HN5**

Rule 19 of the Federal Rules of Civil Procedure "provides for the Joinder to a suit of parties needed for its just adjudication." Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 78 (1st Cir. 1982). The Rule establishes a two part test for determining whether a party should be joined in pending litigation. If a party falls into any of three categories set forth in Rule 19(a), the potential party is necessary and shall be joined as a party if joinder is feasible. If joinder of such a necessary party is not feasible, Rule 19(b) provides that a court must determine whether in equity and good conscience the suit should go forward without the necessary party.

While ATV of S, ATV of D and ATV of SL (the "subsidiaries") were major actors in the events that are the subject of **[*10]** this suit, they are not necessary parties for the purposes of Rule 19(a). HN6 Rule 19(a) provides that a person is a necessary party only if:

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Fed.R.Civ.P. 19(a).

Defendants do not suggest that the subsidiaries are necessary to accord complete relief among the parties. Disposition of this action in the absence of the subsidiaries will not impair or impede their ability to protect their interests. The subsidiaries are wholly owned by ACC, which is in turn wholly owned by Adams. The real party in interest in this litigation is Adams. It is hard to see how joining ATV of S, ATV of D and ATV of SL would do more than add a few names to the title of this action.

Defendants argue that the subsidiaries have an interest **[*11]** in this litigation because the subsidiaries are required to indemnify Adams and ACC for any damages awarded in this suit. Even if such indemnification is necessary, it would require only a shuffling of funds from one of Adams' wholly owned corporations to himself or another of his wholly owned corporations. Plaintiffs would be barred by collateral estoppel from bringing a separate action against the subsidiaries. And while the subsidiaries might be bound by a judgment against Adams or ACC, their interests are identical in any case, and fully protected by the presence in this litigation of Adams, who in effect owns 100 % of the whole groups of corporations. While in some cases, there may be an independent interest in maintaining separate corporate forms, defendants fail to draw my attention to any such interest in this case.

Defendants' argument that the subsidiaries are necessary parties because failure to join them may impair their ability to recover on their claims for indemnification against STV and its wholly owned subsidiary is unsupported and unpersuasive. In addition, plaintiffs contend, without response from the defendants, that the subsidiaries' claims for indemnification **[*12]** against STV and its subsidiary have been found meritless by a state court.

As a practical matter, Adams, ACC and the three subsidiaries have identical interests in this litigation. Failure to join the subsidiaries therefore does not impair or impede their ability to protect their interests, and they cannot be considered necessary parties under Rule 19(a).

Accordingly, defendants' motion to join ATV of S, ATV of D and ATV of SL as necessary parties, and defendants' motion to dismiss for lack of jurisdiction is DENIED.

The State Law Claims

M.G.L. c. 93A, § 11

Plaintiffs allege in Counts X and XXVI of the second amended complaint that defendants committed unfair and deceptive acts in violation of M.G.L. c. 93A, § 2. Section 11 of chapter 93A establishes a right of action only in "[a] person who engages in the conduct of any trade or commerce." Defendants argue that plaintiffs have no standing to sue under chapter 93A because their claims arise out of an employment dispute, and employees are not engaged in the conduct of trade or commerce as required by section eleven. Plaintiffs respond that they were never employed by defendants, but were independent consultants and hence **[*13]** have standing under section eleven.

In Manning v. Zuckerman, 388 Mass. 8, 444 N.E.2d 1262 (1983), the Supreme Judicial Court held that "HN7 disputes arising out of the employment relationship between an employer and an employee are not cognizable under c. 93A." In that case, plaintiff had edited the Atlantic Monthly between 1966 and 1980. In 1980, defendant acquired the magazine after promising to retain plaintiff as the magazine's editor. On the day he purchased the magazine, defendant executed an employment contract with plaintiff. Several months later defendant terminated the employment agreement and the parties executed a consulting contract. Defendant eventually terminated the consulting agreement and dismissed plaintiff altogether. The court held that plaintiff was not an independent businessman under either contract, that he was therefore not engaged in trade or commerce, and was not covered under chapter 93A.

Manning controls this case. Plaintiffs seek to recover essentially on two grounds: that Adams fraudulently breached an oral contract to employ them in executive positions after the sale of assets was completed, and that Adams breached the "consulting" contracts **[*14]** by dismissing them on May 5, 1984. It is clear that the first ground concerns a dispute "arising out of the employment relationship." Manning, id. at 1265. All of the alleged misrepresentations concerned Adams' promises to employ plaintiffs. The alleged breach was defendants' failure to employ plaintiffs as promised. In essence, this ground concerns an employer-employee dispute.

The mere fact that Putnam and Broman never actually worked under the alleged oral contract does not distinguish their case from Manning. Plaintiffs' alleged contract was subject to regulation as extensive as that accorded the plaintiff in Manning. See id. at 1264 ("In light of these comprehensive protections for employees . . . it would be somewhat surprising if we should now conclude that the Legislature intended that allegedly unlawful acts under G.L. c. 93A, § 2(a), and 11, also include matters arising from an employment relationship."). Hence they are no more in need of the additional protections of M.G.L. c. 93A than was the plaintiff in Manning. Nor is

there anything about this dispute that renders it more public "in nature" than the dispute in Manning. Id. at 1266. Plaintiffs' **[*15]** claims arising from defendants' pre-sale promises of employment are beyond the scope of chapter 93A.

Plaintiffs argue that in any case, the "consulting" contract was not an employment contract, and hence claims arising from that contract may be actionable under chapter 93A. However, as Manning made clear, I cannot conclude that a contract is not an employment contract merely because it calls for one party to render "consulting" services. Id. at 1264. The key consideration is whether the parties are dealing as independent business entities such that regulation under chapter 93A is appropriate. See id. at 1265, 1266. I can decide this question only by looking to the terms and substance of the contract. According to plaintiffs' allegations, under the terms of the "consulting" contract each plaintiff received $ 75,000 in annual salary. ACC or ATV of S was required to provide plaintiffs a travel allowance, cars, secretarial services, office space, and accident and health insurance. Their pension rights and the length of their contracts remained unchanged from when they were employed by STV. And each was to receive an annual bonus based on a percentage of the annual operating **[*16]** profits of ACC. This contract is practically indistinguishable from standard executive employment contracts. Plaintiffs' association with ACC and its subsidiaries was long term, and plaintiffs had a direct, continuing interest in the health and performance of the corporations. The services offered by plaintiffs to defendants were not "offered generally . . . to the public in a business transaction." I conclude that in executing and performing the "consulting" contract, plaintiffs and defendants were not dealing as independent business persons and hence, plaintiffs are not entitled to maintain suit under chapter 93A.

Accordingly, defendants' motion to dismiss plaintiffs' claims under M.G.L. c. 93A (Counts X and XXVI of the second amended complaint) is ALLOWED.

Massachusetts Civil Rights Statute

In Counts V and XXI of the complaint, plaintiffs purport to state a claim under the Massachusetts Civil Rights Statute, which provides:

Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, [by any person **[*17]** or persons, whether or not acting under color of law] may institute and prosecute in his own name and on his own behalf a civil action.

M.G.L. c. 12, § 11I. Defendants contend that their alleged conduct did not violate any statutory or constitutional rights guaranteed to the plaintiffs and hence could not have violated the civil rights statute. Plaintiffs respond that by firing them solely because they hired a lawyer to press their claims against ATV of S and ACC, defendants interfered with their rights to hire counsel and to seek redress in the courts.

The facts of this cast outrun the meager case law on the Massachusetts Civil Rights Statute; it appears to be a question of first impression whether the statute prohibits a private employer from firing an employee for pressing a legal claim against the employer. Nonetheless, the extensive body of law developed under the federal civil rights statutes, especially 42 U.S.C. § 1983, provides a ready source of guidance on this issue. *HN8* The Massachusetts legislature intended that the civil rights statute cover the same federal rights protected by 42 U.S.C. § 1983, with the difference that the Massachusetts statute apply to private conduct, **[*18]** as well as conduct "under color of state law." See Batchelder v. Allied Stores Corp., 393 Mass. 819, 473 N.E.2d 1128, 1131 (1985). As the Supreme Judicial Court has held: "the Legislature intended to provide a remedy under G.L. c. 12, § 11I, coextensive with 42 U.S.C. 1983, except that the Federal statute requires State action, whereas its State counterpart does not." Id. Thus, federal statutory and constitutional rights which section 1983 protects against violation by the government are protected by the Massachusetts statute from violation by private individuals.

If Adams were acting under color of state law, section 1983 would give Putnam and Broman a right of action against him. The Supreme Court has held that the First Amendment protects individuals' rights to associate for the purpose of consulting and hiring a lawyer to bring a discrimination suit under section 1983. NAACP v. Button, 371 U.S. 415 (1963). In Button, the Court stated that the state of Virginia could not infringe "the right of the NAACP and its members and lawyers to associate for the purpose of assisting persons who seek redress for their constitutionally guaranteed and other rights." Id. at **[*19]** 428.

At least two courts of appeals have applied Button to hold that the First Amendment prohibits the government from interfering with an individual's right to consult and hire an attorney for the purpose of bringing a section 1983 suit against the government. In Owens v. Rush, 654 F.2d 1510 (10th Cir. 1981), the Tenth Circuit Court of Appeals held that where a state employee alleged that he had been fired because he helped his wife, also a state employee, bring a Title VII action against the state, the employee stated a cause of action under section 1983 for violation of his First Amendment rights. The Court stated that under Button "assisting" litigation, "attending meetings on necessary legal steps" and "associating for the purpose of assisting persons seeking legal redress" are "modes of expression and association protected by the First and Fourteenth Amendments." Id. at 1379 (quoting Button, 371 U.S. at 428-429). Similarly, in Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985), the Ninth Circuit Court of Appeals held that "retaliation for assisting with litigation and bringing litigation states a claim under the [First Amendment]."

Following the reasoning **[*20]** of Owens and Rizzo, I hold that were Putnam and Broman government employees, section 1983 and the First Amendment would protect them from termination solely on the grounds that they had commenced legal action against the government. Litigation is a form of speech. In many cases, it is the only effective speech available to individuals. See Button, 371 U.S. at 429 ("abstract discussion is not the only species of communication which the Constitution protects; the First Amendment also protects vigorous advocacy . . ."). That Putnam and Broman did not seek to assert a political section 1983 claim in hiring their lawyer, does not distinguish this case from Owens or Rizzo. The First Amendment protects speech regardless of content, and I see no reason to protect an individual's right to assert a section 1983 claim while refusing to protect the right to pursue other kinds of claims. Thus, had defendants acted under color of state law, section 1983 would have provided Putnam and Broman a private cause of action for violation of their First Amendment rights. I conclude that the Massachusetts Civil Rights Statute protects Putnam and Broman from defendants' alleged actions **[*21]** even though not taken under color of state law.

H&D and Dickstein argue that they cannot be liable under the Massachusetts Civil Rights statute because they did not "actively" participate in the attempt to interfere with plaintiffs' rights. However, contrary to the assertion of Dickstein and H&D, the Massachusetts statute does

not on its face require that a defendant "actively" participate in the infringement of rights. Dickstein and H&D are accused of participating in Adams' decision to terminate the consulting contracts with Putnam and Broman. The complaint specifically alleges that Adams discussed with Dickstein the adverse impact any suit by plaintiffs might have on ACC and ATV of S, and that Dickstein and H&D aided, abetted and encouraged Adams in terminating plaintiffs' employment. These allegations are sufficient to state a claim against Dickstein and H&D for joint liability under the Massachusetts Civil Rights Statute.

Accordingly, defendants' motion to dismiss Counts V and XXI of the complaint is DENIED.

Conspiracy

In Counts VIII, IX, XXIV and XXV, plaintiffs purport to state a claim for conspiracy to deceive and defraud. Defendants argue that these claims must be dismissed **[*22]** because the complaint alleges joint liability on behalf of all defendants for the completed tort of deceit, and the allegations cannot be converted into a separate tort for conspiracy.

HN9 To state a claim for conspiracy, plaintiffs must allege more than mere joint tortious activity by the defendants; they must allege: "(1) . . . the combination of two or more persons to accomplish an unlawful purpose, or a purpose not unlawful by unlawful means, and (2) some peculiar power of coercion of the plaintiff possessed by the defendants in combination which any individual standing in like relation to the plaintiff would not have had . . . ." Bishop, 17A Massachusetts Practice, § 981 at 191-192 (3d ed. 1987). The Supreme Judicial Court has stated the basic rule for finding a true conspiracy as follows:

HN10
There can be no independent tort for conspiracy unless in a situation "where mere force of numbers acting in unison or other exceptional circumstances may make a wrong."...And in order to prove an independent tort for conspiracy upon the basis of "mere force of numbers acting in unison" it must be shown that there was some "peculiar power of coercion of the plaintiff possessed by the defendants **[*23]** in combination which any individual standing in a like relation to the plaintiff would have had."

Fleming v. Dane, 304 Mass. 46, 50, 22 N.E.2d 609 (1939); see also Neustadt v. Employer's Liability Assurance Group, 303 Mass. 321, 325, 21 N.E.2d 538 (1939); DesLauries v. Shea, 300 Mass. 30, 33, 13 N.E.2d 932 (1938).

Contrary to plaintiff's arguments, the complaint does not allege facts sufficient to show that defendants possessed by force of numbers any unique power over plaintiffs. In fact, their complaint makes clear that Adams alone had the power successfully to complete the alleged torts. The other defendants may have assisted him to achieve an illegal purpose, but they were not essential to his alleged purpose, and the combination did not add any unique force to the power he already held.

HN11 The Massachusetts courts have left open the possibility that a plaintiff may state a claim for true conspiracy in "exceptional circumstances." See Fleming, 304 Mass. at 50; Shea, 300 Mass. at 33. However, the Supreme Judicial Court has made clear that exceptional circumstances "are rare and should be added to with caution." Fleming, 304 Mass. at 50; see also 17A **[*24]** Massachusetts Practice at 195 n.2 ("courts have been reluctant to define the exceptional circumstances which would warrant recovery, and have based their decision on the basic rule"). I find that plaintiffs have alleged no exceptional circumstances to support their allegations of conspiracy. Most importantly, plaintiffs have not alleged that defendants were acting as their fiduciaries. See Loughery v. Central Trust Co., 258 Mass. 172, 176, 154 N.E.2d 583 (1927); Willett v. Herrick, 242 Mass. 471, 478, 136 N.E. 366 (1922); see also, 17A Massachusetts Practice at 195, n.2 ("There have been intimations that . . . exceptional circumstances may exist where there is a fiduciary relationship.").

In essence, plaintiffs have alleged only that the defendants have jointly committed various torts, including deceit, against them. HN12 Where the allegations of conspiracy add nothing to the underlying tort allegations, the courts have repeatedly held that ,,the gist of such an action is not the conspiracy alleged, but the tort committed against the plaintiff." 17A Massachusetts Practice at 192 (citing cases). In this case, I find that the ,,effect of the charge that the defendants **[*25]** conspired together is to fix a joint liability on the defendants." Neustadt, 303 Mass. at 325. The allegations do not support a claim for the independent tort of conspiracy.

Accordingly, defendants' motion to dismiss Counts VIII, IX, XXIV and XXV, which purport to state claims for conspiracy to deceive and defraud, is ALLOWED.

Intentional Infliction of Emotional Distress

Defendants also move to dismiss Counts XI and XXVII, which purport to state a claim for intentional infliction of emotional distress. They contend that these counts must be dismissed because plaintiffs fail to allege that defendants' actions were extreme and outrageous. I disagree. Contrary to defendants' assertions, plaintiffs need not allege a pattern of extreme behavior, or multiple instances of outrageous conduct to state a claim. As Agis v. Howard Johnson Co., 371 Mass. 140, 355 N.E.2d 315, 319 (1976), makes clear, HN13 a single instance of outrageous conduct may be sufficient to state a claim for intentional infliction of emotional distress. Plaintiffs allege that defendants repeatedly misrepresented their intentions to retain plaintiffs and then fired them at a critically embarrassing moment. Under the **[*26]** circumstances, a jury could find that defendants' summary dismissal of plaintiff was so extreme and outrageous as to be "beyond all possible bounds of decency." See Agis, 355 N.E.2d at 319 (plaintiff seeking to recover damages caused by summary dismissal from her job stated a claim for intentional infliction of emotional distress).

Defendants H&D and Barry J. Dickstein (collectively "Dickstein") contend that plaintiffs fail to state a claim because they did not allege that Dickstein actively participated in plaintiffs' firing. Plaintiffs do, however, allege that Dickstein actively participated in the formulation of the plan to remove them from their jobs, and aided Adams in firing plaintiffs. Participation in formulating such a plan may itself be extreme and outrageous. So too may be aiding in plaintiffs' termination. Plaintiffs' allegations state a claim against Dickstein.

Accordingly, defendants' motion to dismiss plaintiffs' claims for intentional infliction of emotional distress (Counts XI and XXVII, is DENIED.

Deceit

Dickstein and H&D contend that plaintiffs fail to state a claim for deceit against them. This contention is without merit. Plaintiffs have alleged with some **[*27]** specificity Connecticut defendants' role in the scheme to deceive plaintiffs into agreeing to the sale of STV's assets. These allegations are more than adequate to state a claim.

Accordingly, Dickstein's motion to dismiss plaintiffs' claims for deceit (Counts VII and XXIII) is DENIED.

Miscellaneous

Rules 8, 9 and 10.

Defendants seek dismissal of the remaining counts of plaintiffs' complaint on the grounds that the pleadings fail to comply with Rules 8, 9 and 10 of the Federal Rules of Civil Procedure. The complaint satisfactorily complies with these rules. The alleged fraud is stated with considerable particularity.

Accordingly, defendants' motion to dismiss the remaining counts for failure to comply with Fed.R.Civ.P. 8, 9 and 10 is DENIED.

Jurisdiction

H&D and Dickstein contend that Dickstein is beyond the reach of the Massachusetts long arm statute, M.G.L. c. 223A, § 3, because all of his allegedly wrongful acts were undertaken solely in his capacity as a corporate officer, and hence he is protected by the fiduciary shield doctrine. HN14 The fiduciary shield doctrine "holds that acts performed by a person in his capacity as a corporate fiduciary may not form the predicate **[*28]** for the exercise of jurisdiction over him in his individual capacity." Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111 (D. Mass. 1983), aff'd, 743 F.2d 947 (1st Cir. 1984). I am not aware of any case applying this doctrine to the Massachusetts long arm statute. See id. I need not determine, however, whether Massachusetts would apply this doctrine to restrict the grasp of its long arm statute because I find that the fiduciary shield doctrine would not protect Dickstein from the jurisdiction of this court.

The fiduciary shield doctrine is an equitable principle. Id. It should not be applied where the corporate officer has substantial individual involvement in the corporation of which he is an officer or in the alleged wrongful activity. See id. Dickstein owns 50 % of the stock of H & D. He was one of the founders of the corporation and was at all relevant times its president. Dickstein was personally involved in the purchase of STV's assets and the allegedly wrongful termination of plaintiffs. Moreover, he had a direct, personal financial interest in the deal; plaintiffs aver that as of January 10, 1983 Dickstein personally acquired a warrant **[*29]** to purchase up to 2,600 shares of ACC common stock. Dickstein's personal involvement with and interest in H&D and the sale of assets was so extensive that even if the fiduciary shield doctrine does restrict the reach of Massachusetts' long arm statute, it affords him no protection from the jurisdiction of this court.

Dickstein and H&D also contend that both are beyond the reach of the Massachusetts long arm statute because they never transacted business in Massachusetts. The long arm statute provides that I may exercise jurisdiction over the defendants, inter alia, for acts "arising from [defendants'] transacting any business in [Massachusetts]." M.G.L. c. 223A, § 3(a). I find plaintiffs' allegations sufficient to support a finding that Dickstein and H&D were transacting business in Massachusetts. See Nova Biomedical Corp. v. Moller, 629 F.2d 190 (1st Cir. 1980); Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928 (1st Cir. 1985). Plaintiffs allege that Connecticut defendants prepared and mailed into Massachusetts the letter offering to purchase the assets of STV. Defendant Dickstein entered Massachusetts on several occasions for meetings connected with the sale of assets. **[*30]** He communicated with plaintiffs while they were in Massachusetts and with Massachusetts financial institutions. The entire deal had as its purpose the purchase of STV's assets, the bulk of which were located in Massachusetts. It is clear that these defendants transacted business in Massachusetts and are within the reach of the long arm statute.

Accordingly, these defendants' motion to dismiss plaintiffs' complaint for lack of jurisdiction is DENIED.

Venue

H&D and Dickstein also assert that venue is not proper in Massachusetts. In this diversity suit, venue is proper in the district where all plaintiffs reside. 28 U.S.C. § 1391(a). Since both Putnam and Broman reside in Massachusetts, venue is proper in this district.

Accordingly, Dickstein and H&D's motion to dismiss the complaint for improper venue is DENIED.

Conclusion

Defendants' motion to dismiss Counts I, II, III, IV, XVII, XVIII, XIX, and XX (RICO); X and XXVI (M.G.L. c. 93A); and VIII, IX, XXIV and XXV (conspiracy) is ALLOWED.

Defendants' motion to dismiss Counts XI and XXVII (intentional infliction of emotional distress); Counts VII and XXIII (deceit); and Counts V and XXI (Massachusetts Civil Rights Act) is DENIED. **[*31]** Defendants' motions to join necessary parties, dismiss for failure to comply with Fed.R.Civ.P. 8, 9 and 10, dismiss for lack of jurisdiction, and dismiss for improper venue are also DENIED.

Service: **Get by LEXSEE®**
Citation: **1987 U.S. Dist. Lexis 5768**
View: Full
Date/Time: Wednesday, January 26, 2005 - 2:55 PM EST

\* Signal Legend:
🛑 -   Warning: Negative treatment is indicated
⚠️ -   Caution: Possible negative treatment
◆ -   Positive treatment is indicated
Ⓐ -   Citing Refs. With Analysis Available
ⓘ -   Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.