IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

| | |
|---|---|
| SUSAN LAFOREST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C. A. NO.: 04-30195-MAP |
| v. ) | |
| ) | |
| AMERIQUEST MORTGAGE COMPANY, ) | |
| BRAD BIGDA, ) | |
| JOHN DOE 1 ) | |
| ) | |
| Defendants ) | |

**DEFENDANT BRADLEY JOSEPH BIGDA'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AGAINST HIM FOR LACK OF PERSONAL JURISDICTION AND
<u>INSUFFICIENCY OF SERVICE OF PROCESS</u>**

Defendant Bradley Joseph Bigda ("Bigda"), respectfully submits this reply memorandum in support of Bigda's Motion to Dismiss Plaintiff's Complaint Against Him for Lack of Personal Jurisdiction and Insufficiency of Service of Process dated January 10, 2005 (the "Motion"). The Court should grant Bigda's Motion because the claims alleged in plaintiff's Complaint do not provide a sufficient basis upon which to exercise personal jurisdiction over Bigda. Plaintiff has failed to establish that Bigda has sufficient contact with Massachusetts to support jurisdiction under the Massachusetts Long Arm Statute and the Due Process Clause of the United States Constitution. The claims in plaintiff's Complaint did not arise from Bigda's alleged transaction of business in the Commonwealth, nor did they arise from any tortious injury by an act or omission of Bigda within the Commonwealth, nor has plaintiff shown sufficient minimum contacts to warrant haling Bigda into this jurisdiction.

For the reasons set forth below and in Bigda's Motion, the Court should dismiss the Complaint against Bigda.

## FACTS

Beginning in May 2004, plaintiff and her counsel contacted Ameriquest to dispute the failed funding of her April 2004 loan transaction. Complaint at ¶ 32. Subsequently, on or about June 11, 2004, Bigda was assigned to investigate and resolve the matter in response to plaintiff's contacting Ameriquest at its corporate headquarters in Orange, California. See Declaration of Bradley Joseph Bigda, dated January 10, 2005 at ¶¶ 5, 7 ("Bigda Decl."). In his role as loan work-out specialist, Bigda was solely involved on behalf of Ameriquest to work-out plaintiff's dispute concerning the failed April 2004 mortgage loan transaction. See Bigda Decl. at ¶¶ 5-7.

In attempt to workout the loan transaction, Bigda communicated with plaintiff's counsel through fax and telephone on behalf of Ameriquest. The letters sent by plaintiff's counsel into California depict a series of counter-offers to Bigda's July 28, 2004 offer on behalf of Ameriquest. See July 28, 2004 Letter from Brad Bigda to Jason Fregeau attached to plaintiff's Complaint ("July 28, 2004 Letter"); July 30, 2004 Letter from Jason Fregeau to Brad Bigda attached to plaintiff's Complaint ("July 30, 2004 Letter"). Bigda and plaintiff's counsel, however, never reached a mutually agreeable position. Id.; September 27, 2004 Letter from Jason Fregeau to Brad Bigda attached to plaintiff's Complaint ("September 27, 2004 Letter").

## ARGUMENT

### I. BIGDA'S ACTIONS DO NOT CONSTITUTE "TRANSACTING ANY BUSINESS" IN MASSACHUSETTS

Plaintiff claims that this Court may exercise personal jurisdiction over Bigda through Section 3(a) of the long-arm statute. Plaintiff argues that Bigda's four telephone conversations, two faxes, and three mailings, which all occurred in California in response to plaintiff's loan

workout attempt, demonstrate that Bigda "transacted business" within Massachusetts. Pl. Opp. at 8. Bigda, however, did not "transact business" in Massachusetts pursuant to Section 3(a).

When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving the existence of personal jurisdiction. Callahan v. Harvest Board Int'l, Inc., 138 F.Supp.2d 147, 157 (D. Mass. 2001); LaVallee v. Parrot-Ice Drink Prods. Of America, Inc., 193 F. Supp. 2d 296, 302 (D. Mass. 2002). In order to prove jurisdiction under the long arm statute, plaintiff must also establish a viable cause of action. Callahan, 138 F. Supp. 2d at 165 (a "court cannot base its exercise of jurisdiction on claims which are not viable"). Nonetheless, neither plaintiff's Complaint, declaration or documents, set forth with particularity any intentional misrepresentation by Bigda in connection with the loan workout attempt.

Moreover, courts determining whether a non-resident party has "transacted business" in satisfaction of the long-arm statute often focus on whether the non-resident initiated or solicited business in Massachusetts. This test ensures that personal jurisdiction extends only to individuals who have deliberately, rather than fortuitously had contacts with the forum state. See Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997); Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 290 (1st Cir. 1999) ("relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state").

Bigda's actions were taken in California in response to a complaint directed by plaintiff and her counsel into California and not initiated by his own volition or his reaching out into the Commonwealth. See Bigda Decl. at ¶ 5; see also Lyle Richards Int'l, Ltd., 132 F.3d at 114 (observing that "arising from" question turns on whether the *defendant* took the first step in

- 3 -

contacting the Commonwealth) (emphasis added; citation and internal quotation marks omitted); Phillips Exeter Acad., 196 F.3d at 290, 292 (since action did not directly arise out of defendant's contacts with the forum state, such contacts "fail to evince purposeful availment of the benefits and protections" of the forum).  Moreover, to the extent Bigda responded to plaintiff's dispute, he acted only on behalf of Ameriquest.  Indeed, Bigda does not have authority to contract on behalf of Ameriquest, his employer.  See LaVallee, 193 F. Supp. 2d at 303 (employee's "communications transmitted into Massachusetts were ancillary to the alleged offending…activities of" his employer).

  Here, like Callahan, the *plaintiff* took the first step in initiating contact with Bigda in California.  Indeed, Bigda would not be involved but for plaintiff's calling into California. Phillips Exeter Acad., 196 F.3d at 290, 292 (since defendant's contacts with Massachusetts did not constitute "the first step in a train of events" that resulted in plaintiff's alleged injury, defendant's activities did not constitute a "but for" cause for the alleged claims made by plaintiff such that personal jurisdiction attached).  Consequently, since all of Bigda's actions were fortuitously in response to plaintiff's dispute directed into California, the fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that Bigda transacted business *in* Massachusetts.  Indeed, but for plaintiff's contacting Ameriquest with respect to her loan dispute, Bigda would not be involved.

  Moreover, plaintiff has offered scant evidence linking Bigda to Massachusetts.  See Backman, 84 F.R.D. at 134 (Section 3 of long-arm statute "requires that the facts supporting long-arm jurisdiction also give rise to plaintiff's cause of action…plaintiff's burden of proof can be met only by facts which support this claim") (citations omitted); Aub v. Technicolor Entm't Servs., 224 F. Supp. 2d 371, 373 (D. Mass. 2002) (G.L. 223A § 3(a) "inquiry requires the court

- 4 -

to focus on the quality as well as the quantity of the nonresident's contacts with Massachusetts"). To be sure, plaintiff alleges that Bigda had "at least four telephone conversations, sent two facsimiles and sent three mailings."[1] Pl. Opp. at 8. Yet, Bigda's role in the failed loan workout attempt was completely ancillary to plaintiff's cause of action. See Bigda Decl. at ¶¶ 5-7. Indeed, plaintiff's cause of action against Bigda arises out of a letter sent by plaintiff's counsel from Massachusetts into California, rather than a contact arising out of California and directed into Massachusetts. See Motion at 9-10.

In order to have personal jurisdiction over Bigda under 3(a) of the long-arm statute, plaintiff must demonstrate that Bigda's actions were deliberately and knowingly made into Massachusetts. Unquestionably, Bigda's actions were not voluntary, but rather a product of Ameriquest's assignment to him of the task of responding to plaintiff's counsel's telephone complaint into California.[2] See Callahan, 138 F.Supp.2d at 165 ("jurisdiction may not rest on

---

[1] Plaintiff also lists numerous other communications in the Opposition and in her Declaration. These "contacts," however, were initiated by plaintiff rather than Bigda. Many represent unanswered telephone calls and contacts made to persons other than Bigda. Those contacts certainly cannot be linked to Bigda as "deliberate" contacts. Further, plaintiff incorrectly cites Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 93 as purporting to hold that any contact with an attorney is considered contact with the client. Pl. Opp. at 5 n.2. Irwin, however, states that *notice* (in terms of Rules of Service of Process) to an attorney constitutes notice to the attorney's client. Id. Nowhere in Irwin does the court discuss issues of personal jurisdiction or a contacts analysis.

[2] Plaintiff claims that Haddad v. Taylor, 32 Mass. App. Ct. 332 (1992) "is on all fours" with the instant case. Pl. Opp. at 8. In Haddad, the cause of action directly arose out of the negotiations for the sale of land in Massachusetts with the defendant's agent. Id. at 335. Indeed, the agent was specifically hired in order to find a buyer such as the plaintiff and in order to negotiate for the sale of land. Id. at 335, 336. As such, the court had little difficulty finding that the agent's actions constituted deliberate actions. Id. at 336. Here, however, the cause of action arose out of a failed April loan transaction to which Bigda played no part. Moreover, while the agent affirmatively and deliberately reached out and initiated a transaction in Massachusetts in Haddad, here, Bigda, acting on behalf of his employer, simply responded to plaintiff's requests rather than making any affirmative action to initiate contact in Massachusetts. It is clear that Bigda was thereafter only fortuitously involved in a workout attempt of that loan. See also Lyle Richards Int'l, Ltd., 132 F.3d at 113 (motion to dismiss granted since most performance rendered

the 'unilateral activity of another party or a third person,' and the contacts by the defendant must be voluntary") (citation omitted); Phillips Exeter Acad., 196 F.3d at 292 (payments sent to New Hampshire insufficient to establish jurisdiction over defendant given that no voluntary contact existed where defendant did not initiate relationship).

Accordingly, plaintiff's Complaint does not satisfy the prerequisites for personal jurisdiction over Bigda in this matter. The Court should therefore dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## II. PLAINTIFF CANNOT ESTABLISH PERSONAL JURISDICTION OVER BIGDA THROUGH A CAUSE OF ACTION FOR MISREPRESENTATION WHERE BIGDA NEVER REPRESENTED TO PLAINTIFF THAT A SETTLEMENT HAD BEEN REACHED IN CONNECTION WITH THE LOAN WORKOUT ATTEMPT

Plaintiff claims that Bigda's failure to consummate settlement with respect to plaintiff's failed April 2004 loan transaction was a misrepresentation upon which she relied to her detriment, and which provides this Court with personal jurisdiction over Bigda pursuant to 3(c) of the long-arm statute. See Complaint at ¶ 81; Pl. Opp. at 5. Despite plaintiff's allegations, however, no agreement to settle the matter was ever reached by plaintiff's counsel and Bigda much less any tortious misrepresentation. See Callahan, 138 F. Supp. 2d at 165 (a "court cannot base its exercise of jurisdiction on claims which are not viable"); Backman v. Schiff, 84 F.R.D. 132, 134 (D. Mass. 1979) ("plaintiff's burden of proof can be met only by facts which support [her] claim"). The insufficiency of pleading under Rule 9(b) and the failure of plaintiff's declaration, Complaint and the documents attached to the Complaint to set forth a tortious misrepresentation of any sort are insufficient to establish personal jurisdiction over Bigda under

---

by defendant occurred outside Massachusetts); Phillips Exeter Acad., 196 F.3d at 288, 292 (court can exercise personal jurisdiction where a "significant subset" of contacts between the defendant and the forum exists; "without evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship" personal jurisdiction does not exist) (emphasis in original).

Section 3(c) of the long arm statute. Moreover, as set forth above in Section I, and in Bigda's Motion, this is not a case where Bigda voluntarily reached out into Massachusetts such that he purposefully availed himself of the privilege of conducting activities in Massachusetts. See Lyle Richards Int'l, Ltd., 132 F.3d at 114; Phillips Exeter Acad., 196 F.3d at 292 (since action did not directly arise out of defendant's contacts with the forum state purposeful availment requirement not met). Rather, plaintiff, through her counsel, initiated the contact to Ameriquest in California, which is insufficient as a matter of due process, to hale Bigda into a Massachusetts Court.

Plaintiff's Opposition claims that plaintiff "relied to her detriment upon Defendant Bigda's knowing misrepresentations that a settlement agreement had been reached," that an agreement was reached between Bigda and plaintiff's counsel, that plaintiff relied upon Bigda's alleged representation that this alleged agreement was reached and that she at some point "finally determined" that *Bigda* (rather than her attorney who deemed the workout attempt "null and void") did not want to settle. See Pl. Opp. at 5. These accusations made in plaintiff's Opposition are not only wholly unfounded, but are also completely contradicted by the materials attached to plaintiff's Complaint.[3] Moreover, "allegations in a lawyer's brief or legal memorandum are insufficient…to establish jurisdictional facts." Callahan, 138 F. Supp. 2d at 153 (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)). Plaintiff's subjective conclusion that fraud

---

[3] Plaintiff does not allege in the Complaint or the Declaration attached to Plaintiff's Opposition any specific written or oral statements made by Bigda that were allegedly fraudulent. See generally, plaintiff's Complaint; Declaration of Susan LaForest, January 26, 2005 ("LaForest Decl."). Nor does plaintiff allege in her Complaint or Declaration that Bigda himself stated that an agreement was reached. See generally, plaintiff's Complaint; LaForest Decl. Rather, plaintiff conclusively asserts – through a letter which *plaintiff's attorney* wrote – that a settlement was reached. Complaint at ¶ 36; LaForest Decl. at ¶ 14. At no place in the Complaint nor the Declaration does plaintiff state that Bigda said a settlement occurred or indicated in any fashion that Ameriquest or Bigda agreed to the terms in the July 30, 2004 letter.

occurred and her unsubstantiated hearsay that a settlement was reached are therefore insufficient to hale Bigda into a Massachusetts court.[4]

Plaintiff's attempt to establish personal jurisdiction over Bigda on the basis of such groundless allegations does not satisfy the requirements of Section 3(c) of the Massachusetts Long Arm Statute. Indeed, Section 3 requires that the facts supporting long-arm jurisdiction also give rise to the plaintiff's cause of action. See Backman, 84 F.R.D. at 134, 135-136 (granting 12(b)(2) motion as to one defendant since contacts with Massachusetts over two years were limited to directing "minimal correspondence" (five letters) to plaintiff and that such contacts created "an attenuated and fortuitous relationship with Massachusetts"). Put differently, "plaintiff's burden of proof can be met only by facts which support [her] claim." Id. at 134. See also Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 207 (D. Mass. 2000) (dismissing plaintiff's claim for misrepresentation because "each general allegation must be supported by a specific factual basis" and "a court need not credit unsubstantiated conclusions or subjective characterizations") (citation omitted). Indeed, like Johnson, the fraud claim here is stated in very broad terms and contains nothing more than conclusory statements. See Johnson, 122 F. Supp. 2d at 208.

Specifically, Count VIII states: "Defendants' failure to consummate settlement -- are misrepresentations upon which Plaintiff relied to her detriment." Complaint at ¶ 81. Such conclusory allegations are insufficient to satisfy a cause of action for fraud.[5] Akerman v.

---

[4] Fed. R. Civ. P. 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Thus, general claims of wrongdoing are insufficient." Callahan, 138 F. Supp. 2d at 166.

[5] Nor can these allegations be converted into an action for fraud solely because the defendants allegedly failed to live up to plaintiff's expectations. First Mut., Inc. v. Rive Gauche Apparel Distribution, Ltd., 1990 WL 235422, at *2 (D. Mass. December 21, 1990) (alleged

Bankworcester Corp., 751 F. Supp. 11, 12 (D. Mass. 1990) ("conclusory statements that pertain more to mismanagement than to misrepresentations" do not satisfy Fed. R. Civ. P. 9(b)); Loan v. Federal Deposit Ins. Corp., 717 F. Supp. 964, 967 (D. Mass. 1989) ("plaintiff has an obligation to explain what is untrue about each of the challenged statements and cannot merely quote a statement and assert that it is untrue").

Further, conclusory and insufficient allegations and attenuated inferences therefrom cannot support the exercise of personal jurisdiction. See Interface Group-Massachusetts, LLC v. Rosen, 256 F. Supp.2d 103, 108 (D. Mass. 2003) (the "First Circuit rejects the exercise of personal jurisdiction whenever the connection between the cause of action and the defendant's in forum contacts seems *attenuated* and *indirect*") (emphasis in original); Barrett, 239 F.3d at 27 (in accepting plaintiff's allegations as true, the court need not credit conclusory allegations or farfetched inferences; rather, a "plaintiff must do more than simply surmise the existence of a favorable factual scenario"); Callahan, 138 F. Supp. 2d at 153 ("the law does not require [the court] struthiously to credit conclusory allegations or draw farfetched inferences") (quoting Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

This is particularly true, when, as here, plaintiff's evidence flatly contradicts the inference that plaintiff asks the Court to draw. See Callahan, 138 F. Supp. 2d at 165 (a "court cannot base its exercise of jurisdiction on claims which are not viable"). Specifically, the July 30, 2004 letter does not, and cannot, purport to be a settlement agreement with respect to the loan workout attempt between Bigda and plaintiff's counsel. By its very terms, the July 30, 2004 letter – which plaintiff claims "memorializes our agreement" and is the "settlement agreement" which forms the basis of her claims against Bigda – is nothing more than a counter-offer letter

---

breach of settlement agreements cannot be converted into action for fraud solely because defendants allegedly failed to live up to their obligations).

sent by counsel to Bigda in response to the July 28, 2004 offer letter.  See Callahan, 138 F. Supp. 2d at 163-164 (letter allegedly containing fraudulent misrepresentation sent by out-of-state corporation did not establish minimum contacts to support personal jurisdiction for plaintiff's fraud claim).  See also July 30, 2004 Letter.  As such, if no tortious injury occurred, jurisdiction cannot be established based upon a claim sounding in tort.[6]

Plaintiff's July 30, 2004 letter to Bigda states that the mortgage will be changed pursuant to the July 28, 2004 letter from Bigda "*except that there will be $12,000 cash out*" (emphasis added).  The terms originally proposed in the July 28, 2004 letter, however, contained a clause for $10,000 cash out.  Moreover, this supposed "settlement agreement" then goes on to add *two more new stipulations* that were also not part of the July 28, 2004 offer.  These two new counter-offers – the "removal or change of negative information placed by Ameriquest Mortgage on Ms. LaForest's credit history" and a request for payments to Ms. LaForest for attorney's fees,

---

[6]   Although there are circumstances under which jurisdiction may be permitted upon a single, isolated tort committed by an out-of-state defendant in Massachusetts against a Massachusetts resident, the cases cited by plaintiff do not conclude that jurisdiction was proper based solely upon that single tort.  See Pl. Opp. at 13, citing, JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 97-98 (D. Mass. 1999) (fraudulent misrepresentation claim only "fulfills the literal requirement of section 3(c)…Literal satisfaction of the long-arm statute does not, however, compel this Court to exercise jurisdiction" over defendant); The Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 983-984 (1st. Cir. 1996) (concluding jurisdiction existed under 3(a) as well as 3(c) of the long-arm statute).  Rather, these cases plainly demonstrate that the court analyzed the single isolated act in conjunction with the numerous other contacts with Massachusetts, including communications and travels to Massachusetts.  See JMTR Enterprises, 42 F. Supp. 2d at 96, 97-98 ("nearly every contact with Massachusetts was instrumental to the formation" of the contract which formed the basis of the action including: defendant's trip to Massachusetts; defendant's meeting with plaintiff for seven hours in Massachusetts; a series of more than 100 communications between plaintiff and defendant; and a contract agreement to supply consulting services for two years to Massachusetts company); see also The Ealing Corp., 790 F.2d at 981, 984 (defendant's "scheme involved almost daily communications by telex, telephone or overnight letters back and forth"; deal also involved "weekly detailed reports," approvals, travels to Massachusetts, defendant's acquisition of a Massachusetts post-office box and a toll-free telephone number to handle customer inquiries, along with deposits of money from defendant into the plaintiff's Massachusetts bank account).  As such, the Ealing Corp. court concluded the "contacts picture" was "complete."  Id. at 984.

expenses and costs in the amount of $1,400 – were never offered, let alone agreed upon, in the July 28, 2004 letter.

It is a central tenet of contract law that such statements do not constitute binding acceptance of an agreement. See Restatement (Second) of Contracts § 59 (if any provision is added to which the offeror did not assent, the consequence is not merely that the addition is not binding and that no contract is formed, but that the offer is rejected, and that the offeree's power of acceptance thereafter is terminated). In fact, plaintiff's attorney concludes that an agreed-upon settlement was never reached in his September 27, 2004 letter. See September 27, 2004 Letter. Indeed, plaintiff's counsel states "[t]his letter is our last attempt to consummate the settlement." Id. Had the "agreement" been consummated based upon the July 30, 2004 letter which forms the basis of plaintiff's misrepresentation claim against Bigda, there would have been no need for plaintiff's counsel to send the additional letter to Bigda in an effort to forge an agreement nearly a month later.

In short, plaintiff has not alleged a tortious injury for purposes of G.L. 223A § 3(c) personal jurisdiction. This Court's exercise of jurisdiction over Bigda would thus violate traditional notions of fair play and substantial justice. As such, Bigda should be dismissed.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in Bigda's Motion to Dismiss, Bradley Joseph Bigda respectfully requests that the Court grant his Motion to Dismiss Plaintiff's Complaint Against Him for Lack of Personal Jurisdiction and Insufficiency of Service of Process.

Respectfully submitted,

BRADLEY JOSEPH BIGDA

By his attorneys,


/s/ R. Bruce Allensworth
R. Bruce Allensworth, BBO# 015820
   (ballensworth@klng.com)
Brian M. Forbes, BBO# 644787
   (bforbes@klng.com)
Ryan M. Tosi, BBO# 661080
   (rtosi@klng.com)
KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
75 State Street
Boston, Massachusetts 02109
(617) 261-3100

Dated:  April 27, 2005

CERTIFICATE OF SERVICE

      I hereby certify that on April 27, 2005, I served a true copy of the foregoing document by electronic filing upon the following:

Jason David Fregeau, Esq.
47 Lincoln Road
Longmeadow, MA 01106
(413) 567-2461
jasonrissa@comcast.net

          /s/ Ryan M. Tosi
          Ryan M. Tosi