UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUSAN LAFOREST,<br>　　　　Plaintiff<br><br>　　v.<br><br>AMERIQUEST MORTGAGE<br>COMPANY, et al.,<br>　　　　Defendants | )<br>)<br>)<br>)   Civil Action No. 04-30195-MAP<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION WITH REGARD TO
DEFENDANT BIGDA'S MOTION TO DISMISS (Document No. 5)
August 5, 2005

NEIMAN, U.S.M.J.

Susan LaForest ("Plaintiff") brings this action -- which arises out of a 2004 mortgage loan refinancing -- against both Ameriquest Mortgage Company ("Ameriquest") and one of its California employees, Bradley Joseph Bigda ("Bigda") (together "Defendants"). Bigda's motion to dismiss the claims against him for lack of personal jurisdiction and for insufficient service of process has been referred to this court for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, the court will recommend that Bigda's motion be allowed.

I. BACKGROUND

In the main, the following background comes from the allegations in Plaintiff's complaint. However, since personal jurisdiction is at issue, the court has also considered other documents supplied by the parties. *See Callahan v. Harvest Bd. Int'l, Inc.*, 138 F. Supp. 2d 147, 152-53 (D. Mass. 2001) (considering "materials outside the

complaint is appropriate in ruling on a motion to dismiss for lack of personal jurisdiction") (citing cases). *See also Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (when faced with motion to dismiss for lack of personal jurisdiction, "[t]he plaintiff must go beyond the pleadings and make affirmative proof") (citations and internal quotation marks omitted).

Ameriquest is a Delaware corporation with its principal place of business in Orange, California. (Complaint ¶ 4.) Bigda is a loan workout specialist for Ameriquest in California. (Bigda Decl. ¶¶ 2-3.) Bigda has neither been to, nor solicited business in, Massachusetts. (*Id.* ¶¶ 12-13.) His only role with regard to this case involves failed settlement negotiations between Ameriquest and Plaintiff.

In early 2004, Plaintiff negotiated with personnel at Ameriquest to refinance her existing Ameriquest mortgage, eventually signing loan documents in mid-April. (Complaint ¶¶ 18-20.) Sometime thereafter, however, Ameriquest informed Plaintiff that her home's appraisal was not as high as expected and that it would not fund the loan. (Complaint ¶¶ 22, 23.) Plaintiff soon became two months behind on her existing loan payments. (Plaintiff Aff. ¶ 7.)

Plaintiff then attempted to negotiate a settlement with Ameriquest "through" Bigda, who "entered the picture on June 11" after being assigned to her case (*Id.* ¶ 12; Bigda Decl. ¶ 7.) Bigda and Plaintiff's attorney communicated via telephone, facsimile, and mail, although Bigda may have also once contacted Plaintiff directly. (Complaint ¶¶ 32-34.) Negotiations continued until July 30, 2004, when the parties ostensibly agreed to a settlement, as described in a letter by Plaintiff's attorney attached to the

complaint.  (*Id.* ¶¶ 35-36.)

During August and September of 2004, however, the parties disagreed as to whether Plaintiff needed to submit additional documents.  (See Plaintiff Aff. ¶ 15; Complaint ¶¶ 37-40.)  On September 16, 2004, Plaintiff alleges, "Defendants agreed to consummate the settlement."  (Complaint ¶ 41.)  Nonetheless, Plaintiff maintains, Defendants failed to follow through on their obligations.  (See *id.* ¶¶ 42-51.)  Accordingly, Plaintiff filed the present lawsuit.

It is clear from the allegations in the complaint that Bigda's only role was as Ameriquest's representative in the failed settlement negotiations.  Nonetheless, each of the complaint's nine causes of action purportedly targets both "Defendants."  Counts I and II allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  Count III alleges a violation of Mass. Gen. L. ch. 93A.  Counts IV and V allege, respectively, negligent and intentional infliction of emotional distress.  Count VI alleges negligence.  Count VII alleges defamation.  Count VIII alleges fraud.  And Count IX alleges breach of contract.  In due course, Bigda filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and the court heard oral argument.

## II. DISCUSSION

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction requires the court to construe all facts in favor of the plaintiff.  *See Tatro v. Manor Care, Inc.*, 625 N.E.2d 549 (Mass. 1994).  The burden, however, is on the plaintiff to demonstrate sufficient contacts between the nonresident defendant and the forum.  *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995).  Here, the court

3

believes, Plaintiff has not sustained that burden. Accordingly, the court will recommend that Bigda's motion to dismiss be allowed.

"When embarking upon the fact-sensitive inquiry of whether a forum may assert personal jurisdiction over a defendant, the court's task is not a rote, mechanical exercise." *Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995) (citations and internal quotation marks omitted). *See also Good Hope Indus., Inc. v. Ryder Scott Co.*, 389 N.E.2d 76, 78 (Mass. 1979). Rather, the court must pursue a two-part inquiry: (1) whether the plaintiff demonstrates that jurisdiction is authorized by the forum's long-arm statute, and, if authorized, (2) whether such jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sawtelle*, 70 F.3d at 1387; *Foster-Miller*, 46 F.3d at 144.

A. <u>Long-Arm Statute</u>

As for the statutory analysis, the law of the forum state applies. *Sawtelle*, 70 F.3d at 1387. In relevant part, the Massachusetts long-arm statute (hereinafter "section 3") provides as follows:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
>
> > (a) transacting any business in this commonwealth; [or]
> >         . . . .
> >
> > (c) causing tortious injury by an act or omission in this commonwealth.

Mass. Gen. L. ch. 223A, § 3(a), (c). Thus, the question here is whether Plaintiff's

causes of action against Bigda are ones "arising from" either his "transacting any business in" Massachusetts (section 3(a)) or his "causing tortious injury by an act or omission in" Massachusetts (section 3(c)). The court will consider each aspect of the question in turn.

1. *Section 3(a)*

Section 3(a) is to be construed broadly. *See Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 931 (1st Cir. 1985); *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 94 (D. Mass. 1999). Indeed, a defendant may be deemed to have transacted business in Massachusetts under section 3(a) without being physically present in the state. *Workgroup Tech. Corp. v. MGM Grand Hotel, L.L.C.*, 246 F. Supp. 2d 102, 109-10 (D. Mass. 2003) (citation omitted). *See also Ross v. Ross*, 358 N.E.2d 437, 439 (Mass. 1976) (noting that the language of section 3(a) "is general and applies to any purposeful acts by an individual, whether personal, private or commercial"). Moreover, as the First Circuit has repeatedly instructed, section 3(a) may be satisfied even when the defendant's forum contacts are quite sparse, for example, sending a single telex to Massachusetts. *See Ealing Corp. v. Harrods, Ltd.*, 790 F.2d 978, 983 (1st Cir. 1986). *See also Bond Leather*, 764 F.2d at 932 (mailing four letters to and receiving a telephone call from plaintiff in Massachusetts satisfied section 3(a)); *Hahn v. Vermont Law Sch.*, 698 F.2d 48, 50 (1st Cir. 1983) (mailing application information and acceptance letter to plaintiff in Massachusetts satisfied section 3(a)). Still, in order to ensure that section 3(a) includes "deliberate, [not] fortuitous, contacts with the forum," the court must also consider "whether the nonresident party initiated or solicited

5

the business transaction in Massachusetts." *Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d 111, 113 (1st Cir. 1997). This inquiry guarantees that litigation in Massachusetts based on such contacts is "reasonably foreseeable." *Id.*

In the instant case, Bigda appears to have made a sufficient *number* of telephone calls, letters, and facsimile transmissions to Plaintiff or her attorney in Massachusetts to satisfy section 3(a).[1] He did not, however, *initiate* or *solicit* these contacts. Rather, it was Plaintiff who "sought" to refinance her mortgage and Plaintiff who then initiated settlement negotiations with Ameriquest which, only then, brought in Bigda, its employee. (See Plaintiff Aff. ¶¶ 3, 11; Bigda's Decl. ¶ 7.) In the court's estimation, therefore, Plaintiff has not demonstrated that personal jurisdiction over Bigda is authorized by section 3(a). *See Lyle Richards*, 132 F.3d at 113-14 (no personal jurisdiction over out-of-state defendant where Massachusetts plaintiff initially solicited defendant's involvement in the transaction); *New Hampshire Ins. Guar. Ass'n v. Markem Corp.*, 676 N.E.2d 809, 812-13 (Mass. 1997) (nonresident defendant did not transact business by mailing insurance payments to Massachusetts, since Massachusetts-based insurer-plaintiff solicited insurance business in New Hampshire). *Compare Tatro*, 625 N.E.2d at 549 (California company transacted business in Massachusetts by systematically advertising in Massachusetts); *Hahn*, 698 F.2d at 51 (nonresident law school transacted business by sending application for admission and

---

[1] Bigda's argument that these contacts "occurred in California" is inaccurate since Massachusetts courts have long held that remote communications occur in the forum. *See Bond Leather*, 764 F.2d at 934; *Murphy v. Erwin-Wasey, Inc.*, 460 F.2d 661, 664 (1st Cir. 1972).

notice of acceptance to plaintiff in Massachusetts).

    2. *Section 3(c)*

Whether jurisdiction over Bigda is authorized by section 3(c) is a closer call. In *Murphy*, an early section 3(c) decision cited by Plaintiff, the First Circuit held that a defendant who mailed a fraudulent misrepresentation into Massachusetts satisfied section 3(c)'s requirement that he "caus[e] tortious injury by an act or omission in this commonwealth." 460 F.2d at 663. "Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state," the court stated, "he has for jurisdictional purposes, acted within that state." *Id.* at 664. Subsequent decisions have followed *Murphy* in similar circumstances. *See, e.g.*, *Ealing Corp.*, 790 F.2d at 982; *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079, 1084 (1st Cir. 1973); *JMTR Enters.,* 42 F. Supp. 2d at 97.

The instant complaint alleges that Bigda communicated with Plaintiff's attorney and, perhaps once, with Plaintiff herself during settlement negotiations. Although the causes of action themselves do not detail Bigda's exact actions, the fraud claim (Count VIII) at least alleges that the "failure to consummate the settlement [was a] misrepresentation." (Complaint ¶ 81.) In other words, the complaint effectively appears to allege that Bigda, albeit at the behest of his employer, sent fraudulent misrepresentations into Massachusetts. At first blush, therefore, jurisdiction over Bigda would appear, pursuant to *Murphy*, to be authorized by section 3(c), at least with regard

to any claim based in fraud.[2]

Nonetheless, the court believes, as Bigda argues, that his status as a low-level employee, acting within the scope of his employment and deriving no personal benefit from his forum contacts, precludes application of section 3(c) with regard to *any* of Plaintiff's claims. A similar situation was presented in *LaVallee v. Parrot-Ice Drink Prods. of Am., Inc.*, 193 F. Supp. 2d 296 (D. Mass. 2002). In that case, District Judge Nathaniel M. Gorton held that section 3(c) jurisdiction over a "junior business

---

[2] In the court's view, there can be no section 3(c) jurisdiction over Bigda with regard to Plaintiff's negligence-based claims (Counts IV and VI). The tort claims in *Murphy* and its progeny were grounded in fraud, deceit, and/or fraudulent misrepresentation. *See Murphy*, 460 F.2d at 663; *Ealing*, 790 F.2d at 979; *Whittaker Corp.*, 482 F.2d at 1084; *JMTR Enters.*, 42 F. Supp. 2d at 97; *Burtner v. Burnham*, 430 N.E.2d 1233, 1236-37 (Mass. 1982). As other courts have recognized, there is a critical distinction for section 3(c) purposes between such "intentional" tort claims and claims based in negligence. *See, e.g., Bradley v. Cheleuitte*, 65 F.R.D. 57, 60 (D. Mass. 1974) (noting "crucial" difference between *Murphy* line of cases where defendant's acts "are intentional" and cases where acts "are at most negligent"); *Burtner*, 430 N.E.2d at 1237 (noting "apparent distinction in the *Murphy* case between intentional acts outside Massachusetts causing a 'tortious injury' within the Commonwealth and negligent acts creating a condition from which damage might later arise"); *Fern v. Immergut*, 773 N.E.2d 972, 975 n.9 (Mass. App. Ct. 2002) (citing *Murphy* and noting that section 3(c) jurisdiction would not lie in negligence cause of action). *Cf. Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 205 (1st Cir. 1994) (noting that *Murphy* "was decided in the context of fraudulent misrepresentation" and questioning whether it should extend to defamation). As one circuit court has explained: "The underlying premise of the *Murphy* opinion seems to be that negligent and intentional acts should be treated differently when interpreting statutory language. The *Murphy* court apparently agrees that jurisdiction would not lie had the act with which the court was concerned been negligent." *Margoles v. Johns*, 483 F.2d 1212, 1219 (D.C. Cir. 1973). *See also First Act, Inc. v. Brook Mays Music Co.*, 311 F. Supp. 2d 258, 261 n.4 (D. Mass. 2004) (noting that "the First Circuit has subsequently expressed 'profound reservations' about extending . . . *Murphy* beyond claims for fraudulent misrepresentation") (quoting *Ticketmaster-New York*, 26 F.3d at 205 n.5); *Kolikof v. Samuelson*, 488 F. Supp. 881, 883 (D. Mass. 1980) (suggesting that *Murphy* should be limited to situations where the words the defendant transmits over state lines "are intended to bring about the injury").

8

associate" from Texas did not lie even though the plaintiff's claims were based on "numerous calls and faxes" he directed to the plaintiff in Massachusetts. *Id.* at 300-02. In a well-reasoned decision, Judge Gorton opined that it would frustrate the purpose of the long-arm statute -- as well as the constitutional requirements further discussed below -- to apply section 3(c) to a low-level employee-agent who "is alleged neither to have derived any personal benefit from his contacts in the Commonwealth nor to have acted beyond the scope of his employment." *Id.* at 302 (distinguishing *Calder v. Jones*, 465 U.S. 783 (1984), which involved a tabloid news editor and reporter who "derived a direct benefit from the publication of [an allegedly libelous] article" about a public figure). Like the defendant in *LaVallee*, Bigda was an employee-agent acting within the scope of his employment who did not personally benefit from his forum contacts. *See also Interface Group-Mass., LLC v. Rosen*, 256 F. Supp. 2d 103, 105 (D. Mass. 2003) (deeming it "well established," under *LaVallee*, that jurisdiction over an employee "may not be based on jurisdiction over the corporation itself"); *RF Techs. Corp. v. Applied Microwave Techs., Inc.*, No. 05-32-P-C, 2005 U.S. Dist. LEXIS 8506, at *19 (D. Me. May 6, 2005) (citing *LaVallee* with approval).

Plaintiff mistakenly asserts that Judge Gorton, in deciding *LaVallee*, "adopted" and "misapplied" the disputed "fiduciary shield doctrine," a judicially-created equitable principle which, in essence, states that "acts performed by a person acting . . . as a corporate fiduciary may not [justify] . . . jurisdiction over him" individually. *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983), aff'd, 743 F.2d 947 (1st Cir. 1984). *See also Trans Nat'l Travel, Inc. v. Sun Pacific Int'l*,

10 F. Supp. 2d 79 (D. Mass. 1998). As Judge Gorton recognized, no Massachusetts court has accepted the fiduciary shield doctrine and he declined to do so as well. *See LaVallee*, 193 F. Supp. 2d at 302 and n.2. *See also Johnson Creative Arts*, 573 F. Supp. at 1111 (noting that doctrine has not been adopted in Massachusetts); *Trans Nat'l Travel*, 10 F. Supp. 2d at 83 (predicting that Massachusetts is unlikely to adopt the doctrine). Instead, as indicated, Judge Gorton simply applied "agency principles" to conclude that jurisdiction would not lie over a "junior business associate" who "did not act in the forum to serve his personal interests, but rather acted solely as an agent of [his employer]." *Id.* at 302.

The court finds Judge Gorton's analysis persuasive. Accordingly, this court too suggests that the fiduciary shield doctrine not be accepted. Morever, the doctrine, as in *LaVallee*, would not apply here since Bigda was not a "corporate fiduciary," but only a low-level employee, *i.e.*, a loan workout specialist. (See Bigda Decl. ¶ 4 (describing his job as "as a junior business associate" and "not an officer or director" or even "a management position").) Thus, cases involving actions taken by company executives, as cited by Plaintiff, are inapposite. *See, e.g.*, *Trans Nat'l Travel*, 10 F. Supp. 2d at 83 (finding personal jurisdiction over president of air carrier who made a number of contacts with Massachusetts "in his capacity as a corporate representative"); *Putnam v. Adams*, No. 84-0355-S, 1987 WL 13262, at *10 (D. Mass. Jun. 15, 1987) (company president was within reach of section 3 where his allegedly wrongful acts were undertaken "in his capacity as a corporate officer").

Also inapposite are those cases cited by Plaintiff which concern defendants who

actually visited Massachusetts for crucial transactions.  *See, e.g., Shipley Co. v. Clark*, 728 F. Supp. 818, 821 (D. Mass. 1990) (defendants made regular trips to Massachusetts); *Principal Mut. Life Ins. v. Glick*, No. 94-0296, 1994 WL 878819, at *3 (Mass. Super. Ct. Dec. 14, 1994) ("[The defendant] not only placed numerous telephone calls and sent letters to the [plaintiff] from Iowa, *but she also traveled to Massachusetts to inspect the mortgaged property.*") (emphasis added).  As indicated, Bigda is a California resident who has never been to, nor solicited business in, Massachusetts, and he certainly did not visit the Commonwealth in relation to any of the transactions at issue here.  For all these reasons, therefore, the court concludes that jurisdiction over Bigda is not authorized by section 3(c).

B.  Due Process

Assuming *arguendo* -- for purposes of a comprehensive report and recommendation -- that Bigda's contacts satisfy section 3, the court must also analyze whether personal jurisdiction over him comports with due process.  In general, this means that Bigda must "fairly be said to have participated in the economic life of Massachusetts."  *Shipley*, 728 F. Supp. at 822 (D. Mass. 1990) (citing *Bond Leather*, 764 F.2d at 928).  The First Circuit has designated "three distinct components" to this inquiry: "relatedness, purposeful availment (sometimes called 'minimum contacts'), and reasonableness."  *Foster-Miller*, 46 F.3d at 144.  Since all three components must be satisfied, *see Ticketmaster-New York*, 26 F.3d at 206, the court will address each in turn.  In the end, the court believes that jurisdiction over Bigda would not comport with due process.

11

1. *Relatedness*

The relatedness component -- "that a suit arise out of, or be related to" the defendant's in-forum activities -- ensures that these activities caused the injuries. *Ticketmaster-New York*, 26 F.3d at 206, 207.  This causal nexus is essential for specific jurisdiction where, as here, the defendant has insufficient contacts for general jurisdiction.  *Interface Group*, 256 F. Supp. 2d at 107.

While it is difficult to see how Bigda's actions relate to the FCRA claims (Counts I and II), there is no genuine dispute that his contacts -- insofar as they involved settlement negotiations -- purportedly caused at least part of Plaintiff's alleged injuries.  Thus, unlike the situation in *Interface-Group* where the defendant was not involved in the disputed transaction, 256 F. Supp. 2d at 108, Bigda was a key player in the settlement discussions.  Accordingly, the relatedness component appears to have been met.

2. *Purposeful Availment*

The purposeful availment requirement protects defendants from jurisdiction based solely on "random, isolated, or fortuitous" contacts with a forum.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  A plaintiff must demonstrate that the defendant's contacts "represent a purposeful availment of the privilege of conducting activities in [Massachusetts], thereby invoking the benefits and protections of its laws and making the defendant's involuntary presence before [a Massachusetts] court foreseeable."  *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994) (citation and internal quotation marks omitted).  On this score, the court finds Plaintiff's argument wanting.

Two cases in particular provide some guidance. In *Bond Leather*, the First Circuit held that, while a defendant's mailing four letters to and receiving a telephone call from the plaintiff in Massachusetts constituted "transacting any business" under section 3(a), such contacts insufficiently demonstrated purposeful availment. *Bond Leather*, 764 F.2d at 933-35 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957)). Similarly, in *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284 (1st Cir. 1999), the First Circuit stated that "[w]ithout evidence that the defendant actually reached out to the plaintiff's state of residence to *create* a relationship -- say, by solicitation -- the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." *Id.* at 292 (emphasis in original) (citation omitted).

Here too, Bigda did not purposefully avail himself of Massachusetts. As indicated, he merely responded to Plaintiff's settlement demands after Ameriquest assigned him to her case. *See LaVallee*, 193 F. Supp. 2d at 303 (noting that purposeful availment inquiry "ensures that the defendant's contacts with the forum state are not based on the unilateral actions of another party or a third person") (citing, *inter alia*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (internal quotation marks omitted). Moreover, like the defendant in *Bond Leather*, Bigda did not himself decide to participate in the Massachusetts economy but merely represented his employer. *See id.*, 764 F.2d at 934. Further, as indicated, Bigda never solicited business from Plaintiff or any other Massachusetts customer for that matter. *See LaVallee*, 193 F. Supp. 2d at 304 (junior business associate did not purposefully avail himself of Massachusetts where plaintiffs "initiated the contact" and defendant "neither

visited Massachusetts nor stepped out of his role as [his employer]'s emissary").

To be sure, absent solicitation or other direct evidence, indirect evidence such as visiting the forum or overseeing in-forum activities as a senior executive may be sufficient proof of purposeful availment. *See, e.g.*, *Shipley*, 728 F. Supp. at 822 (defendant who visited Massachusetts and worked for a Massachusetts employer purposefully availed himself of the forum); *Yankee Group, Inc. v. Yamashita*, 678 F. Supp. 20, 23 (D. Mass. 1988) (defendant who visited the state "two or three times a year for several years" to conduct business with plaintiff purposefully availed himself of the forum). But here, there is no indirect evidence of such purposeful availment, since Bigda has never visited Massachusetts and, as described, was at best an out-of-state "junior business associate" without any personal interest in Plaintiff's case. *See LaVallee*, 193 F. Supp. 2d at 303-04. At bottom, the "very exiguousness of [Bigda's] contacts suggests [that he] . . . could not have foreseen" that he would be subject to litigation in Massachusetts. *Phillips Exeter*, 196 F.3d at 292.

    3.  *Reasonableness*

The court also concludes that the reasonableness component has not been met in the instant matter. This requirement ensures that the assertion of jurisdiction over a defendant "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). In analyzing this component, courts typically weigh five elements, often described as "gestalt factors": "(1) the defendant's burden of

appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Foster-Miller*, 46 F.3d at 150.

With regard to the first factor, Bigda argues that it would be a substantial burden to defend himself in Massachusetts given its great distance from California. Although the question is close, the court agrees with Bigda in light of the particular facts of this case. To be sure, Bigda has not demonstrated any unique hardship. *See Back Bay Farm, LLC v. Collucio*, 230 F. Supp. 2d 176, 187 (D. Mass. 2002). Yet, it is also clear that it would be difficult for him to face personal liability here, particularly considering that he acted solely as an Ameriquest employee within the scope of his duties.

As to the second factor, Plaintiff contends that Massachusetts has an interest in litigating this case because it concerns Massachusetts real estate. That may be true, but the bulk of the controversy surrounds Ameriquest's business practices, not Plaintiff's property. In the court's view, therefore, California may have an equal (if not greater) interest in adjudicating Bigda's case. The second factor, therefore, does not alter the court's analysis. *See LaVallee*, 193 F. Supp. 2d at 304.

As for the third factor, Massachusetts is clearly the most convenient forum for Plaintiff and the case against Ameriquest will obviously remain here. However, Plaintiff can still obtain efficient and effective relief without including Bigda individually as a defendant. Again, Bigda acted solely on behalf of Ameriquest and there is no evidence

that the allegations would differ had Ameriquest assigned another employee to handle the settlement negotiations. From a practical standpoint as well, Ameriquest likely has far greater resources to pay potential damage awards than its employees.

Similarly, as to the fourth factor, there is no convincing argument that forcing Bigda to defend himself in Massachusetts would promote a more effective resolution of the controversy. As discussed, resolving the case would be equally efficient without Bigda as a defendant. Granted, Plaintiff contends that bringing a "second, parallel suit in California" against Bigda would be wasteful. (Plaintiff's Brief at 15.) Yet, as discussed above, it appears that suing Bigda individually in any forum is also wasteful and should be discouraged. *See Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996) ("Usually this factor is a wash."). And with regard to the fifth and final factor, neither party claims any unique "social impact" here, nor is one apparent.

C. Summary

In sum, the court believes that subjecting Bigda to jurisdiction in Massachusetts for acting solely on Ameriquest's behalf and within the scope of his employment is unreasonable since it would offend traditional notions of fair play and substantial justice. The court also believes that Bigda did not personally avail himself of this forum. Finally, the court believes that personal jurisdiction over Bigda is not authorized by either subsection (a) or (c) of the Massachusetts long-arm statute. Accordingly, the court will recommend that Bigda's motion to dismiss be allowed.[3]

---

[3] Bigda also argues that since he "is not subject to personal jurisdiction in the courts of the Commonwealth," the purported service of process on him was "beyond the territorial limits of effective service prescribed by Fed. R. Civ. P. 4(k)" and, therefore,

IV.  CONCLUSION

For the foregoing reasons, the court recommends that Bigda's motion to dismiss be ALLOWED.[4]

DATED: August 5, 2005

                                          /s/ Kenneth P. Neiman
                                          KENNETH P. NEIMAN
                                          U.S. Magistrate Judge

---

the complaint against him should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(5).  In the court's view, this alternative argument, while creative, need not be considered given the strength of Bigda's personal jurisdiction defense.

    [4]  The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation.  The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection.  The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation.  See *Keating v. Secretary of Health & Human Services*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980).  See also *Thomas v. Arn*, 474 U.S. 140, 154-55 (1985).  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.