```
            IN THE UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
                     WESTERN DIVISION

SUSAN LAFOREST,                  :         No. 04-30195-MAP
          Plaintiff              :
                                 :
     v.                          :
                                 :
AMERIQUEST MORTGAGE COMPANY,     :
BRAD BIGDA,                      :
JOHN DOE 1,                      :
          Defendants             :
```
_____

Plaintiff's Objections to the Report and Recommendation
_____

A. The Report and Recommendation is Driven by the **Policy Assumption** that Employees should not be Sued if the "Deep Pocket" Employer is also a Defendant

The Report and Recommendation ("R&R"), which is internally inconsistent and contrary to law, reveals the underlying **policy** assumption that motivates its result -- an employee should not be sued when the employer is a co-defendant: "[I]t appears that suing Bigda in any forum is also wasteful and should be discouraged." R&R, p. 16. A court may not like that employees and employers can be sued for their tortious conduct and may believe that a case would be "equally efficient" and "effectively resolved" without naming the employee. Id. Yet the law allows a plaintiff to bring

<u>all</u> alleged tortfeasors into a case -- the choice is the plaintiff's, not the court's.

To support its policy assumption, the R&R cuts new law from whole cloth. The R&R explicitly finds that Defendant Bigda's contacts into Massachusetts "purportedly caused at least part of Plaintiff's alleged injuries." R&R, p. 12; <u>see also</u> <u>id</u>., p. 7. Defendant Bigda is properly alleged to have committed tortious conduct in Massachusetts. Yet the R&R finds, relying on <u>LaVallee</u>, that Massachusetts has jurisdiction over an out-of-state, low-level employee **only** when the employee derives a personal benefit from his forum contacts. R&R, pp. 8-9. The R&R's reliance on <u>LaVallee</u> in misplaced; <u>LaVallee</u> provides no legal support for its holding and is simply wrong.

This Memorandum first will discuss the facts, including Defendant Bigda's tortious acts in Massachusetts. Next, this Memorandum will discuss R&R Section A.2 and will show that there is personal jurisdiction over Defendant Bigda pursuant to the Massachusetts long-arm statute, Section 3(c), for his tortious conduct. Finally, this Memorandum will discuss R&R Section B and will show that there are minimum contacts to hale Defendant Bigda into the courts of Massachusetts. The Court should decline to

accept the R&R and should deny Defendant Bigda's motion.[1]

### B. Defendant Bigda Committed Tortious Acts in Massachusetts

In March 2004, Mrs. LaForest is a single mother of four with a fifth foster child. LaForest Aff., par. 2.[2] Mrs. LaForest seeks to have her home refinanced with Defendant Ameriquest, which already holds the mortgage. Id., par. 3. In April 2004, all the loan papers are signed and the refinance is closed. Id., par. 4. Approximately two weeks go by. Defendant Ameriquest, by way of Defendant Doe, calls Mrs. LaForest. Defendants tell her that her home has not appraised for the amount they thought it would and that Defendant Ameriquest has unilaterally decided not to fund the loan to which it is bound by contract. Id., par. 5. Defendants never send a written notice of adverse action. Id., par. 6.

Defendant's breach of contract leaves Mrs. LaForest in horrible financial straits. Id., par. 7. Defendant Ameriquest had agreed to

---

[1] Mrs. LaForest objects to R&R Section A.1 concerning transacting business in the Commonwealth, but waives the objection by not discussing it below. Mrs. LaForest instead focuses upon Defendant's tortious conduct.

[2] Mrs. LaForest remarried on October 9, 2004, and her husband is now serving in Iraq.

fold two months of loan payments into the loan. Id. Now because of the breach, Mrs. LaForest is two loan payments behind -- $3595.30 -- on her home. Id. Up until this time, Mrs. LaForest has never been late on her home payments. Answer, par. 30; see Complaint, par. 30; see also LaForest Aff., par. 8. Defendant Ameriquest reports Mrs. LaForest's loan payments as late on her credit history. LaForest Aff., par. 9. This negative report impedes -- and continues to impede -- Mrs. LaForest's ability to refinance her home. Id.

Defendant Ameriquest begins calling Mrs. LaForest to collect on the mortgage payments. Id., par. 10. Mrs. LaForest engages counsel in May 2004 to handle the matter. Id., par. 11. Defendant Bigda enters the picture on June 11, 2004. Id., par. 12. Negotiations with Defendants continue, including the July 21 & 28 facsimile letters from Defendant Bigda attached to the Complaint. Id. On July 28, Defendants admit that Defendant Ameriquest could not have legally "terminated" the refinance contract. Id., par. 13; see also Complaint, par. 26. A settlement agreement is reached on July 30. Id., par. 14; see Letter to B.Bigda (July 30, 2004) (attached to Complaint).

For the next two months, Defendants -- through Defendant Bigda -- promise the consummation of the settlement. LaForest Aff., par. 15; cf. R&R , p. 6 n.1 (as a matter of law the contacts are deemed

to take place in Massachusetts). Defendants, especially Defendant Bigda, are difficult to contact:

- Aug 16: left message;
- Aug 23: telephone conference;
- Sep 7: left message;
- Sep 14: Defendants demanded an account stated letter signed by Mrs. LaForest and her counsel;
- Sep 15: Defendants drop demand for account stated letter;
- Sep 15: Defendant Bigda has preliminary loan documents sent directly to Mrs. LaForest;
- Sep 17: left message;
- Sep 20: left message;
- Sep 23: left message for B.Bigda;
- Sep 23: left message for B.Bigda's supervisor;
- Sep 27: letter to B.Bigda (attached to Complaint);
- Sep 28: telephone conference with B.Bigda & Complaint filed;
- Undated letter from B.Bigda sent <u>directly</u> to Mrs. LaForest and is received about October 4;
- Oct 12: Defendant Bigda again has preliminary loan documents sent directly to Mrs. LaForest;
- Nov 5: Defendant Bigda has a notification of incompleteness sent directly to Mrs. LaForest.

<u>Id</u>., par. 15; <u>see also</u> Bigda Declaration, pars. 8-9.

Defendants do nothing to consummate the settlement, even though

Mrs. LaForest sets deadline after deadline. See, e.g., Letter to B.Bigda (Sept. 27, 2004) (attached to complaint).

    Mrs. LaForest relies to her detriment upon Defendant Bigda's knowing misrepresentations that a settlement agreement has been reached. Id., par. 16. Defendants assure Mrs. LaForest that, pursuant to the settlement agreement, her loan payments will be folded into her loan. Id., par. 17. The lack of a settlement agreement puts Mrs. LaForest five or more months behind in her loan payments and further harms Mrs. LaForest's credit history. Id., par. 17. When Mrs. LaForest finally determines that Defendants are no longer interested in the settlement to which they have agreed, she feels that her home is in danger of foreclosure. Id. To this day, Mrs. LaForest worries that Defendant Ameriquest will start foreclosure proceedings.

    Mrs. LaForest, not her attorney, makes the decision to consider the settlement null and void and to file suit. Id., par. 18. Mrs. LaForest is convinced that Defendants have no intention of following through on the agreed refinancing of her home. Id. Indeed, Defendants have made no effort to settle this litigation, which shows that Defendants had no intention of ever following through on the agreed settlement. Id.

### C. Defendant Bigda Caused Tortious Injury in the Commonwealth Pursuant to Section 3(c)

At this stage in the litigation, there is no dispute that Defendant Bigda is properly alleged to have committed tortious acts: "[T]he complaint effectively appears to allege that Bigda, albeit at the behest of his employer, sent fraudulent misrepresentations into Massachusetts." R&R, p. 7; see also id., p. 16. Defendant Bigda told Mrs. LaForest that a settlement had been reached when, in fact, Defendant Bigda knew that Defendant Ameriquest had not agreed to any settlement.[3]

The R&R, however, finds that a forum state has jurisdiction over an out-of-state, low-level employee **only** when the employee derives a personal benefit from his forum contacts. R&R, pp. 8-9. The R&R relies upon LaVallee at 301 which, in turn, relies upon a

---

[3] While the R&R focuses upon Mrs. LaForest's fraud claim, Defendant is also liable under the FCRA (the agreement was to eliminate the negative information placed upon Mrs. LaForest's credit history), for defamation (same), for severe emotional distress (e.g. fear of losing her childrens' home), Chapter 93A (unfair and deceptive practices), and negligence (stating there was a settlement when Defendant Bigda knew or should have known there was not). Mrs. LaForest concedes that Defendant Bigda is not liable for breach of contract, though he is directly liable for his deceptive acts and practices related to the breach of contract.

misreading of Calder v. Jones, 465 U.S. 783 (1984). The Supreme Court in Calder did not say **anywhere** -- much less hold -- that, for purposes of jurisdiction, an employee must personally benefit from the contacts with the target forum. Rather, the Supreme Court held that intentional conduct and foreseeability were the keys to jurisdiction:

> "[P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article.... **An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.**"

Calder, 465 U.S. at 789-90 (citations omitted; emphasis added). The Supreme Court also held that the defendants' "status as employees does not somehow insulate them from jurisdiction." Id., p. 790. The findings of LaVallee upon which the R&R depends have no basis in law.

The R&R also cites Rosen and RF Techs Corp. (now published at

369 F. Supp. 2d 24) as support for LaVallee. These cases, however, cite LaVallee only for the proposition that jurisdiction over an employee cannot be based solely on jurisdiction over the company. These cases do not discuss -- much less support -- the proposition that, for purposes of jurisdiction, an employee must benefit from his contacts with the forum state.

The R&R at 10 also states that LaVallee relies upon "agency principles", but does not explain these principles. In fact, agency principles hold that agents, even though employees, are directly liable for their own tortious conduct: "An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal...." Restatement (Second) of Agency s. 343. Indeed, the law of Massachusetts reflects the holding in Calder and the guidance of the Restatement. E.g., Haddad v. Taylor, 32 Mass. App. Ct. 332; 588 N.E.2d 1375 (1992).

Haddad is on all fours with this case. In Haddad, a New York State attorney negotiated the sale of real estate in Massachusetts. Id., p. 333-34/1376. The Massachusetts Court of Appeals held that, even though the attorney was acting as an agent, was not physically present in Massachusetts, and was unable to negotiate a binding contract, the Massachusetts courts would have personal jurisdiction over the defendant attorney. Id., p.

335/1377. The Court of Appeals held that the defendant's deliberate contacts with Massachusetts regarding real estate in Massachusetts were dispositive. Id., p. 336/1377.

Defendant Bigda could reasonably foresee being haled into Massachusetts courts because of his knowing misrepresentations regarding a mortgage on Massachusetts real estate. Defendant Bigda knew that Mrs. LaForest would be harmed by his representations that Defendant Ameriquest had agreed to settlement and that a settlement agreement would soon be forwarded and consummated. Defendant Bigda knew the brunt of the injury would be felt by Mrs. LaForest in the state where her home is located. Consequently, there is personal jurisdiction over Defendant Bigda under Section 3(c).

### C. Defendant Bigda is Subject to Personal Jurisdiction under Substantive Due Process

The inquiry into minimum contacts consists of three elements: relatedness, purposeful availment (also known as "minimum contacts"), and "gestalt" factors. The R&R accepts that Defendant Bigda's actions are related to the liability and damages alleged by Mrs. LaForest. R&R, pp. 7 & 12. This Memorandum will address purposeful availment, then the gestalt factors.

### 1. As a Matter of Law, Defendant Bigda's Tortious Conduct Constitutes Purposeful Availment

The R&R focuses upon the transaction of business under M.G.L. ch. 223A s. 3(a) and does not discuss Defendant Bigda's tortious conduct. The First Circuit holds that the sending of a fraudulent misrepresentation into Massachusetts fulfills the "purposeful availment" requirement. Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972). "[T]here is no constitutional problem in basing jurisdiction upon a single, isolated tort committed by a foreign defendant in Massachusetts against a Massachusetts resident." JMTR Enterprises, L.L.C. v. Duchin, 42 F. Supp. 2d 87, 98 (D. Mass. 1999) (citing The Ealing Corporation v. Harrods Limited, 790 F.2d 978, 983 (1st Cir. 1986)). At this stage of the litigation, there is no dispute that Defendant Bigda is alleged to have transmitted knowing misrepresentations into Massachusetts, fulfilling the purposeful availment requirement.

### 2. Gestalt Factors

The Court must weigh five additional "gestalt" factors: the burden on Defendant, the interests of the forum state, the interests of Plaintiff, judicial economy, and social impact. Each factor will be addressed in turn.

#### Burden on Defendant

The standard for burden is "unique hardship". Back Bay Farm, LLC

page 11

v. Collucio, 230 F. Supp.2d 176, 187 (D. Mass. 2002) (Neiman, J.). The R&R finds that Defendant Bigda "has not demonstrated any unique hardship." R&R, p. 15. Indeed, counsel for Defendant Ameriquest also represents Defendant Bigda. Consequently, this factor falls in favor of Massachusetts jurisdiction.

Interests of the Forum State

The R&R first finds that Defendant Bigda's contacts are deemed to have occurred in Massachusetts. R&R, p. 6 n.1. The R&R then inconsistently finds that California "may" have a greater interest in adjudicating Defendant Bigda's business practices. On the contrary, Massachusetts has a greater interest in adjudicating deceptive and unfair conduct that occurs within the state as well as a greater interest in adjudicating litigation concerning real estate located in the Commonwealth. California law is not being applied to Defendant Bigda's actions -- Massachusetts law is being applied <u>and would be applied</u> by a federal court in California under choice of law principles. Consequently, this factor falls in favor of Massachusetts jurisdiction.

Interests of the Plaintiff

The R&R opines that Defendant Ameriquest is the "deep pocket" and that Defendant Bigda's inclusion is superfluous. R&R, p. 16. The R&R ignores the realities of litigation. First, Defendant Bigda is a major witness and, if he is not made a party, may very

page 12

well fade away. If he does not disappear, then Defendant Bigda would have to be subpoenaed in his judicial district, which includes the problems of service and enforcement. Mrs. LaForest has legitimate real world interests in properly keeping Defendant Bigda a party to this litigation.

Second, the American business landscape is dotted with the wreckage of former deep pockets: LTV Steel, Enron, and WorldCom, to name just a few. Defendant Ameriquest currently is under investigation in 29 states for unfair and deceptive business practices. The Boston Globe (Aug. 3. 2005) (attached). Defendant Ameriquest was prohibited from conducting business in Connecticut until a settlement was reached on July 14. American Banker (June 30, 2005) (attached); http://www.state.ct.us/dob/newsrls/amrqst.htm (Connecticut Banking Commission's announcement of settlement). Defendants Bigda and Doe may end up being the <u>only</u> pockets from which Mrs. LaForest can collect.

The R&R also states that, "Bigda acted solely on behalf of Ameriquest and there is no **evidence** that the allegations would differ had Ameriquest assigned another employee to handle the settlement negotiations." R&R, pp. 15-16 (emphasis added). In other words, the R&R speculates that another employee also would have lied. Yet there currently is **no** "evidence". Period. Even

though this case is nearly a year old, no scheduling conference has been held and no discovery has been exchanged. How another employee might have dealt with Mrs. LaForest is pure speculation.

As noted by the R&R, Mrs. LaForest, a Massachusetts resident, has a great interest in keeping this case about Massachusetts law and Massachusetts real estate in court in Massachusetts. R&R, p. 15. Consequently, this factor falls in favor of Massachusetts jurisdiction.

### Judicial Economy

Mrs. LaForest will sue Defendant Bigda in federal court in California if he is dismissed from this case. If splitting Defendants into multiple suits is the only way to ensure that Mrs. LaForest obtains justice, then so be it. Consequently, this factor falls in favor of Massachusetts jurisdiction.

### Social Impact

Mrs. LaForest agrees with the R&R that this case likely will not cause any unique social impact. While this case may cause Defendants to take a closer look at their business practices, the case itself is not likely to change the law or involve any notable personalities.

## D. Conclusion

For the reasons stated above, the Court should decline the Report and Recommendation and deny Defendant Bigda's motion to dismiss.

Respectfully submitted,

/s/ Jason David Fregeau

Jason David Fregeau,
Trial Attorney (0055426)

47 Lincoln Road
Longmeadow, MA 01106
413/567-2461
413/567-2932 fax

Attorney for Plaintiff

## Certificate of Service

I certify that a copy of the foregoing Plaintiff's Objections to the Report and Recommendation has been served by electronic filing upon R. Bruce Allnesworth, 75 State Street, Boston, MA 02109, this 15th day of August, 2005.

/s/ Jason David Fregeau

_____
Jason David Fregeau, Esq.