IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

_____

|  |  |  |
|---|---|---|
| SUSAN LAFOREST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. NO.: 04-30195-MAP |
| | ) | **ORAL ARGUMENT REQUESTED** |
| AMERIQUEST MORTGAGE COMPANY, | ) | |
| JOHN DOE 1 | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANT AMERIQUEST MORTGAGE COMPANY'S
SUR-REPLY MEMORANDUM IN FURTHER SUPPORT OF
ITS MOTION TO DISQUALIFY ATTORNEY FREGEAU**

Ameriquest Mortgage Company ("Ameriquest") submits this sur-reply memorandum in further support of its Motion to Disqualify Attorney Fregeau pursuant to Massachusetts Rule of Professional Conduct 3.7 ("MRPC 3.7") and United States District Court for the District of Massachusetts Local Rule 83.6(4)(B).

**Introduction**

Disqualification is the only appropriate remedy here. It is clear that plaintiff's counsel, Attorney Fregeau, is a material, if not the key, witness in this matter. By plaintiff's Second Memorandum in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel ("Second Opposition"), Attorney Fregeau now argues that certain Ameriquest account notes and his correspondence with Ameriquest workout specialist, Brad Bidga, definitely prove that Ameriquest breached the loan workout settlement agreement. But these documents prove no such thing. In fact, they show that it was plaintiff's counsel, *Attorney Fregeau*, who rejected that agreement, declaring the loan workout "null and void" on September 28, 2004. They show that

it was *Attorney Fregeau* who refused to honor that loan workout, which would have provided substantial financial benefit to his client, despite Ameriquest's appeal. In the end, Attorney Fregeau was an active and the exclusive participant on behalf of plaintiff in connection with the loan workout negotiations giving rise to this lawsuit. Plaintiff cannot prove her claims without relying on his testimony, and consequently, as a necessary witness, Attorney Fregeau should be disqualified from acting as counsel in this action pursuant to MRPC 3.7 and Local Rule 83.6(4)(B).

## Argument

According to Attorney Fregeau, Ameriquest's motion to disqualify amounts to a "delay/distraction tactic." Pl. Opp. at p. 1. Yet Attorney Fregeau chooses to ignore his considerable involvement with plaintiff's loan workout, the alleged "contract for the settlement of plaintiff's claims," and *his* decision to declare the loan workout "null and void."[1] As plaintiff's own allegations suggest, and as the Ameriquest's Customer Resolution Account Notes ("account notes") demonstrate, Ameriquest dealt exclusively with Attorney Fregeau over a three-month period in attempting to effectuate a workout of plaintiff's loan. The negotiation of the loan workout and Attorney Fregeau's decision to declare the workout "null and void" is the core of plaintiff's causes of action – a negotiation in which Attorney Fregeau was the sole participant on behalf of plaintiff. It will be necessary to specifically question Attorney Fregeau about this failed negotiation, and in fact, once the parties are permitted to resume discovery, Attorney

---

[1] What Attorney Fregeau also ignores is that *it is his own duty*, not that of Ameriquest's to ensure that his representation of plaintiff does not run afoul of the Disciplinary Rules. See MPRC 3.7 ("[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness"). Attorney Fregeau should not be heard to complain about Ameriquest's alleged "delay" and "distraction" tactics when it was Attorney Fregeau's ethical obligation to police himself and avoid from the outset creating the very self-inflicted conflict in which he now finds himself.

Fregeau will be one of the first witnesses Ameriquest seeks to depose.

In response, Attorney Fregeau essentially musters two arguments – that the parties had reached an agreement on settlement as memorialized in his July 30, 2004 correspondence, and that Ameriquest's account notes demonstrate conclusively that Ameriquest breached the alleged loan workout agreement. As explained below, neither argument is supported in the factual record.

### I. The Parties Did Not Have A Meeting Of The Minds On The July 30, 2004 Settlement Terms

Attorney Fregeau claims that the parties reached an agreement embodied in his July 30, 2004 letter to Ameriquest. See Pl. Opp. at 3; Am Compl. at para. 34. A simple reading of this letter, however, demonstrates that it does not, and cannot, purport to be a settlement agreement with respect to the loan workout attempt between Ameriquest and Attorney Fregeau. By its very terms, the July 30, 2004 letter – which Attorney Fregeau claims "memorializes our agreement" – is nothing more than a counter-offer letter, proposing new and different terms and purporting to modify Ameriquest's July 28, 2004 offer.

In Massachusetts, it is black letter law that an offer must be accepted *in the terms it was made* in order to become a binding contract. A conditional acceptance or one that varies from the offer in any substantial respect is in effect a rejection and is the equivalent of a new counteroffer. See Moss v. Old Colony Trust Co., 246 Mass. 139, 148 (1923). Before an enforceable agreement arises "[a]ll [its] essential terms...must be definite and certain so that the intention of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." JRY Corp. v. LeRoux, 18 Mass. App. Ct. 153, 172 (1984). Thus, where a purported acceptance varies from the terms of the offer, such an acceptance is ineffective and creates no binding agreement. See Blomendale v. Imbrescia, 25 Mass. App. Ct.

144, 146-47 (1987) (signed real estate offer to purchase not binding where purchaser introduced new terms that had not been discussed or agreed upon during negotiations).

Here, Attorney Fregeau's July 30, 2004 letter at most amounts to a counter-offer. The letter states that plaintiff's mortgage will be changed pursuant to a July 28, 2004 offer letter from Ameriquest – "*except that there will be $12,000 cash out*" (emphasis added).[2] That term was never agreed to by Ameriquest. See Letters dated July 28, 2004 and July 30, 2004 (attached hereto as Exhibit A, and attached as an exhibit to plaintiff's Complaint). Moreover, this supposed "settlement agreement" proposes two new stipulations that were also not part of Ameriquest's July 28, 2004 offer. These two new counter-offers by Attorney Fregeau – the "removal or change of negative information placed by Ameriquest Mortgage on Ms. LaForest's credit history" and a request for payments to Attorney Fregeau for attorney's fees, expenses and costs in the amount of $1,400 – were never proposed by Ameriquest, let alone agreed upon in Ameriquest's July 28, 2004 offer letter. See id.

In short, Attorney Fregeau's July 30, 2004 letter demonstrates that the parties did not reach an agreement at that time. It will therefore be necessary for Attorney Fregeau to testify to why he believes that an agreement was reached by that letter, what terms he believes were agreed upon, and why Ameriquest's actions in the course of settlement negotiations allegedly constitute bad faith. Attorney Fregeau is the only witness who can testify on plaintiff's behalf on these issues, and, as a result, must be disqualified.

---

[2]    The terms originally proposed in Ameriquest's July 28, 2004 letter contained a clause for $10,000 cash out.

## II. Attorney Fregeau Is A Necessary Witness, And The Account Notes Do Not Prove Otherwise

Attorney Fregeau claims that Ameriquest's account notes are the proverbial "smoking gun" and provide dispositive evidence of Ameriquest's guilt, negating the need for Attorney Fregeau to testify. Of course, this position is unsupportable as *he* abandoned the loan workout agreement and declared the agreement "null and void." It was *he* who rejected Ameriquest's entreaties that he honor that loan workout. See Ameriquest's Account Notes (filed under seal as exhibits to plaintiff's Second Opposition); Letter from B. Bigda (attached hereto as Exhibit B, and attached as an exhibit to plaintiff's Complaint). In fact, Attorney Fregeau seemingly fails to appreciate the inherent contradiction in his argument. He does not – and cannot – dispute that he was an integral witness to the loan workout giving rise to the agreement to settle plaintiff's claims, but these claims are the very subject of the account notes that he claims are dispositive. Accordingly, there remain significant issues as to Attorney Fregeau's summary abandonment of that loan workout agreement.

Attorney Fregeau appears to pin all of his hopes on having Ameriquest's workout specialist, Bigda, corroborate plaintiff's interpretation of the account notes – an interpretation that is predicated on Ameriquest's purported bad faith and on its alleged breach of the loan workout settlement agreement. But Attorney Fregeau cannot dispute Ameriquest's version of events as depicted in the account notes without relying on his own exclusive knowledge of the parties' negotiations. So, for example, if Attorney Fregeau were to take exception to any of Bigda's testimony or Bigda's interpretation of the account notes, the only way Attorney Fregeau could impeach Bigda would be through his *own* recollection of the facts surrounding his exchanges with Bigda. Thus, at trial, Attorney Fregeau would act in dual roles – first, as an advocate for his client, and second, as a witness to Ameriquest's claimed misconduct and his

efforts to mitigate plaintiff's damages.

This is precisely the scenario that MRPC 3.7 is designed to prevent and what the United States District Court for the District of Massachusetts in <u>Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.</u>, 2006 WL 595496, at *5 (D. Mass. Mar. 13, 2006) very recently held to be unethical conduct in violation of MRPC 3.7.  In <u>Carta</u>, Judge Collings disqualified plaintiff's counsel because the plaintiff's "attorneys [were] *the only people who [would] be able to testify on the plaintiff's behalf about the settlement negotiations with the defendants, the correspondence that went back and forth between the parties, the meetings that were had between the plaintiff's counsel and defense counsel and the strategic decisions made during the settlement process*."  <u>Id.</u> at *5 (emphasis added).

Further, Judge Collings noted that "[e]ven the plaintiff herself likely would not be able to testify about such matters since they were undertaken by the attorneys themselves, not by the plaintiff."  <u>Id.</u>  In short, "without the testimony of the plaintiff's lawyers, there would be no one who could testify about the factual 'backbone' of the case – <u>i.e.</u>, the circumstances underlying the defendants' purportedly unfair settlement practices."  <u>Id.</u>; <u>see also</u> <u>Winter Gardens Condo. Trust v. Winter Gardens Development Corp.</u>, 2005 WL 1132635, at *2 (Mass. Super. Apr. 14, 2005) (plaintiff's attorney must be disqualified under MRPC 3.7 because plaintiff's attorney "would be testifying of his own personal knowledge on facts that a jury may take as proof on key issues contested in the litigation"); <u>American Hospital Supply Corp. v. Roy Lapidus, Inc.</u>, 493 F.Supp. 1076, 1078 (D. Mass. 1980) (attorney disqualified because of sufficient personal knowledge of material facts due to active role in sale which was subject matter of litigation).

Attorney Fregeau stands in exactly the same shoes as plaintiff's counsel in <u>Carta</u>. Attorney Fregeau is the *sole witness* to Ameriquest's alleged bad faith, Ameriquest's alleged

- 6 -

breach of contract and Ameriquest's alleged breach of the loan workout agreement and therefore, not only is it likely that he will be called, *it is necessary for him to testify*. Moreover, even if Bigda's testimony entirely confirmed Attorney Fregeau's version of events surrounding the loan workout agreement's terms, Attorney Fregeau still ought to be called as a witness by the plaintiff as to, among other reasons, why he walked away from the workout and deemed the workout agreement "null and void" on September 28, 2004.  See Borman v. Borman, 378 Mass. 775, 785, 790 (1979) ("application of the rule [of professional conduct] depends not on whether the attorney will be called, but whether he ought to be called").  The account notes overwhelmingly prove that it was not Ameriquest that breached the loan workout agreement because it was *Attorney Fregeau* who walked away from the parties' workout agreement, who refused to honor that agreement despite Ameriquest's appeal that he do so, and who caused his client to lose the benefit of an agreement that would have provided her substantial financial relief.  His repudiation of the loan workout and the events leading up to it directly bear on whether Ameriquest allegedly acted in bad faith in the course of loan workout and whether he acted unreasonably in refusing to mitigate his client's alleged damages.

      To be sure, Attorney Fregeau relies on Borman, arguing that an attorney should not be disqualified where it is "unlikely that the lawyer would be called because the client whom he represented could support his contentions by other means."  Pl. Opp. at 2.  While Attorney Fregeau claims that he does not intend to testify in this case, apparently making it "unlikely" that he would be called to the stand, his conflict is not so easily reconciled.  The disputed issues of contract formation, Ameriquest's alleged bad faith, and Ameriquest's alleged breach of the loan workout agreement are issues that not only involve Attorney Fregeau and his ability to prove plaintiff's claims, but also Ameriquest and its ability to prove its affirmative defenses of

Ameriquest's good faith and plaintiff's failure to mitigate damages. Even if plaintiff elects not to call Attorney Fregeau to testify, Ameriquest may call Attorney Fregeau to testify as to facts which are exclusively within his knowledge. The question is not whether Attorney Fregeau, regardless of the consequences, could possibly make a case without his testimony, but rather whether objectively Attorney Fregeau "ought" to be called as a witness. See Borman, 378 Mass. at 785, 790. Here, there is no question that Attorney Fregeau ought to be called to the stand.

In the end, Attorney Fregeau cannot circumvent the fact that, based on the allegations set forth in the Complaint that he himself drafted and signed, he is a necessary witness in this case. He negotiated a loan workout agreement with Ameriquest, inexplicably walked away from that agreement, and is now suing Ameriquest for breach of that agreement when it was *he* who declared the loan workout "null and void." It is undisputed that Attorney Fregeau played an active and significant role in the facts and circumstances that form the basis for plaintiff's Complaint and Ameriquest's defenses, and he should not be permitted to proceed as plaintiff's counsel in this litigation. Like the plaintiff's attorneys in Carta, Attorney Fregeau should be disqualified from acting as counsel in this action pursuant to Massachusetts Rule of Professional Conduct 3.7 and United States District Court for the District of Massachusetts Local Rule 83.6(4)(B).

WHEREFORE, Ameriquest Mortgage Company respectfully asks that the Court to allow its Motion to Disqualify Attorney Fregeau.

- 9 -

      Respectfully Submitted,

      AMERIQUEST MORTGAGE COMPANY

      By its attorneys,

      /s/ *R. Bruce Allensworth*

      _____
      R. Bruce Allensworth (BBO #015820)
      (ballensworth@klng.com)
      Phoebe S. Winder (BBO #567103)
      (pwinder@klng.com)
      Ryan M. Tosi (BBO #661080)
      (rtosi@klng.com)
      KIRKPATRICK & LOCKHART
      NICHOLSON GRAHAM LLP
      State Street Financial Center
      One Lincoln Street
      Boston, MA 02111
      (617) 261-3100

Dated: April 28, 2006

**CERTIFICATE OF SERVICE**

   I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 28th day of April, 2006, and to plaintiff's counsel as follows:

Jason David Fregeau
47 Lincoln Road
Longmeadow, MA 01106

                /s/ *R. Bruce Allensworth*
                _____
                R. Bruce Allensworth