UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUSAN LAFOREST,            )
        Plaintiff            )
                                      )
      v.                        )   Civil Action No. 04-30195-MAP
                                      )
AMERIQUEST MORTGAGE        )
COMPANY, et al.,           )
        Defendants           )

MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S
MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (Document No. 32)
June 2, 2006

NEIMAN, C.M.J.

    Ameriquest Mortgage Company ("Ameriquest") seeks to disqualify Jason D. Fregeau ("Fregeau"), counsel for Susan LaForest ("Plaintiff"), pursuant to Rule 3.7 of the Massachusetts Rules of Professional Conduct (located within Rule 3:07 of the Rules of the Supreme Judicial Court) and District of Massachusetts Local Rule 83.6(4)(B) (which incorporates Rule 3:07 by reference). Plaintiff opposes the motion. For the reasons which follow, the court will allow Ameriquest's motion. In essence, the court finds an unavoidable conflict in having Fregeau act as counsel for Plaintiff while at the same time being a necessary witness in this lawsuit.

I. BACKGROUND

    This action arises out of a mortgage loan refinancing involving Plaintiff and Ameriquest, a Delaware corporation with its principal place of business in California. Bradley Bigda ("Bigda") was a loan workout specialist for Ameriquest and originally

named as a defendant, but he has since been dismissed from the action.  *See LaForest v. Ameriquest Mortg. Co.*, 383 F. Supp. 2d 278 (D. Mass. 2005).

In early 2004, Plaintiff negotiated to refinance her existing Ameriquest mortgage, eventually signing loan documents in mid-April.  Sometime thereafter, however, Ameriquest informed Plaintiff that her home's appraisal was not as high as expected and that it would not fund the loan.  Plaintiff soon became two months behind on her payments.  Plaintiff, through Fregeau, then attempted to negotiate a settlement with Ameriquest through Bigda.  Bigda and Fregeau communicated via telephone, facsimile and mail.  Negotiations continued until July 30, 2004, when Bigda and Fregeau ostensibly agreed to a settlement, as described in a letter by Fregeau that day.

During August and September of 2004, however, Fregeau and Ameriquest disagreed as to whether Plaintiff needed to submit additional documents.  On September 16, 2004, Plaintiff alleges, Ameriquest agreed to consummate the settlement.  Nonetheless, Plaintiff asserts, Ameriquest failed to follow through on its obligations.  Plaintiff filed her lawsuit on September 28, 2004.  Plaintiff claims violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, Mass. Gen. L. ch. 93A, negligent and intentional infliction of emotional distress, defamation, fraud, and breach of contract.

Following discovery and Plaintiff's amending her complaint, Ameriquest filed the instant motion to disqualify Fregeau.  Although Plaintiff opposed Ameriquest's motion, she indicated that Fregeau would withdraw as counsel "if his testimony will become necessary as to a contested material issue." (Document No. 35 at 3.)  The court heard

argument on February 28, 2006. It thereafter ordered Ameriquest to produce certain documents upon which Plaintiff could rely in supplementing her opposition.[1]

The court has now considered the supplementary evidence and arguments proffered by Plaintiff. At bottom, the court believes that it has more than enough information with which to rule on Ameriquest's motion and that any further delay in ruling would ill serve the ends of justice.

## II. DISCUSSION

The court has the inherent power to supervise and, if necessary, disqualify attorneys who appear before it. *Siguel v. Allstate Life Ins. Co.*, 141 F.R.D. 393, 395-96 (D. Mass. 1992) (citing *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984)). That power, per force, is exercised in the context of Rule 3.7 of the Massachusetts Rules of Professional Conduct ("Rule 3.7") which, in its entirety, reads as follows:

> (a) A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or

---

[1] The courts' production order to Ameriquest was the result of an interchange with Fregeau at oral argument. Fregeau stated that "[t]here is no doubt that there is a possibility that I could be a substantial witness." (Document No. 44 at 16.) He explained: "There is no argument from us . . . [w]ithin the realm of occurrences that I could be called as a witness if Mr Bigda, in his testimony in bulk contradicted our story and we do not have any testimony from Mr. Bigda whatsoever as to the facts." (*Id.*) The court then inquired, "[s]o are you arguing that the court can't make a determination at this particular point as to whether or not you would likely be a necessary witness?", to which Fregeau replied, "Absolutely, Your Honor, absolutely." (*Id.* at 17.)

3

> (3) disqualification of the lawyer would work a substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule -1.7 [Conflict of Interest: General Rule] or Rule 1.9 [Conflict of Interest: Former Client].

The purposes of the rule are set forth in Comment [1]: "Combining the roles of advocate and witness can prejudice the opposing party and can involve a conflict of interest between the lawyer and client." In turn, Comment [2] states that "[t]he opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation." "A witness is required to testify on the basis of personal knowledge," Comment [2] continues, "while an advocate is expected to explain and comment on evidence given by others." Accordingly, the comment concludes, "[i]t may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof."

In opposition to Ameriquest's motion, Plaintiff invokes only sub-paragraph (a)(1) of the exceptions to Rule 3.7, namely, that Fregeau's "testimony," if testimony it be, only "relates to an uncontested issue." In essence, Plaintiff argues that certain Ameriquest account notes, as well as Fregeau's correspondence with Bigda, "prove" pursuant to Comment [2] -- and thereby create an uncontested issue -- that Ameriquest breached the loan workout settlement agreement. The court disagrees.

As Ameriquest asserts, the documents Plaintiff cites do not "prove" Ameriquest's breach. Rather, the documents raise factual issues about which Fregeau is the key, indeed the only, witness on Plaintiff's behalf. Moreover, as described below, these are

4

not "theoretical" differences, as Plaintiff posits, but material and genuine issues of fact about which Fregeau's testimony is inevitable.

For example, Plaintiff claims that the parties reached a settlement agreement embodied in Fregeau's July 30, 2004 letter to Ameriquest. By its very terms, however, the letter which Fregeau claimed "memorializes our agreement" appears to be a counter-offer to Ameriquest's offer of July 28, 2004.[2] Accordingly, it will be necessary for Fregeau to testify as to why he believes that a settlement agreement was reached, what terms he believes were agreed upon, and why Ameriquest's actions in the course of negotiations allegedly constitute bad faith.

In addition, Plaintiff will no doubt seek to introduce certain communications between Fregeau and Bigda cited in her complaint. For example, five letters attached to the complaint concern the proposed terms of the loan workout and the alleged "contract for settlement of [P]laintiff's claims." (Complaint ¶ 86.) Three of those letters were drafted by Fregeau. Plaintiff's complaint also makes mention of telephone conversations between Fregeau and Bigda regarding the negotiation of the loan workout. (See *id.* ¶¶ 32, 46, 47.) As is obvious, Fregeau is the only witness on Plaintiff's behalf to these particular events.

Nonetheless, Plaintiff asserts that Ameriquest's account notes provide dispositive evidence of Ameriquest's liability, thereby negating the need for Fregeau to testify on her behalf. Again, however, there are genuine and material factual issues

---

[2] For example, the terms originally proposed in Ameriquest's July 28, 2004 letter contained a clause for a $10,000 cash out. Fregeau's letter in response mentioned a $12,000 cashout.

5

with regard to these notes and to which Fregeau is Plaintiff's key witness. Plaintiff cannot dispute Ameriquest's version of events as depicted in the account notes without relying on Fregeau's exclusive knowledge of the parties' negotiations.

The present situation is precisely the scenario that Rule 3.7 is designed to prevent, *i.e.*, an attorney having to act as both an advocate and a necessary witness. As Magistrate Judge Collings recently explained, "'[a] lawyer is likely to be a necessary witness where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere.'" *Carta ex rel. Estate of Carta v. Lumbermens Mut. Cas. Co.*, 419 F. Supp. 2d 23, 29 (D. Mass. 2006) (quoting *Merrill Lynch Bus. Fin. Servs. v. Nudell*, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003)). Here, as was true in *Carta*, Fregeau's proposed testimony is certainly relevant and material; he is the only one "who will be able to testify on the plaintiff's behalf about the settlement negotiations with the defendants, the correspondence that went back and forth between the parties, the meetings that were had between the plaintiff's counsel and defense counsel and the strategic decisions made during the settlement process." *Id.* at 29-30. Moreover, "[e]ven the plaintiff herself likely would not be able to testify about such matters since they were undertaken by the attorney[ ] [himself], not by the plaintiff." *Id.* at 30. In short, without Fregeau's testimony, "there would be no one who could testify about the factual 'backbone' of the case-*i.e.*, the circumstances underlying the defendants' purportedly unfair settlement practices." *Id.* See also *American Hosp. Supply Corp. v. Roy Lapidus, Inc.*, 493 F. Supp. 1076, 1078 (D. Mass. 1980) (attorney disqualified because he "has sufficient personal knowledge of material facts [such] that he ought to

be called as a witness"); *Winter Gardens Condo. Trust v. Winter Gardens Dev. Corp.*, 19 Mass. L. Rptr. 252, 2005 WL 1132635, at *2 (Mass. Super. Ct. Apr. 14, 2005) (plaintiff's attorney must be disqualified under Rule 3.7 because attorney "would be testifying of his own personal knowledge on facts that a jury may take as proof on key issues contested in the litigation").

To be sure, Plaintiff relies on *Borman v. Borman*, 393 N.E.2d 847, 857 (Mass. 1979), for the proposition that an attorney should not be disqualified where it is "unlikely that the lawyer would be called because the client whom he represented could support [her] contentions by other means." The court, too, is mindful of the fact that, in the first instance, it should "defer to the best judgment of counsel and his client." *Id.* (citation omitted). But *Borman* is simply inapplicable to the facts at bar. First, Plaintiff's and Fregeau's "best judgment" to the contrary, there is simply no alternative to Fregeau's testimony as a necessary witness. While Plaintiff may claim that she does not intend to have Fregeau testify in this case, Fregeau's conflict -- for all the reasons mentioned -- is not so easily reconciled. The disputed issues of contract formation, Ameriquest's alleged bad faith, and Ameriquest's alleged breach of the loan workout agreement are all issues that only involve Fregeau and, therefore, Plaintiff's ability to prove her claims. Second, these very same factual issues involve Ameriquest's ability to prove its affirmative defenses of good faith and Plaintiff's failure to mitigate damages. Thus, even if Plaintiff elects not to call Fregeau to testify, Ameriquest intends to call him

at both a deposition and trial as to facts which are exclusively within his knowledge.[3]

In the end, the question is not whether Plaintiff could possibly make a case without Fregeau's testimony, but rather whether objectively Fregeau "ought" to be called as a witness. See *Borman*, 393 N.E.2d at 857. Plaintiff cannot avoid the obvious, namely, that Fregeau played an active and significant role in the very facts which form the basis of both Plaintiff's complaint and Ameriquest's defenses. Therefore, Fregeau is "likely to be a necessary witness" in this case within the meaning of Rule 3.7 and must be disqualified.

In disqualifying Fregeau, the court is well aware of the Supreme Judicial Court's warning that disqualification "is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Adoption of Erica*, 686 N.E.2d 967, 970 (Mass. 1997) (citations and internal quotation marks omitted). In addition, the court is aware that an opposing party's motion to disqualify should be scrutinized and found free of "harassment" or "dilatory tactics." *Id.* at 974. Yet even with these admonitions in mind, the court deems disqualification the only appropriate remedy in the instant matter. Fregeau was the sole and exclusive participant on Plaintiff's behalf in connection with the loan workout negotiations which gave rise to this lawsuit and Plaintiff simply cannot prove her claims, and Ameriquest cannot prove its defenses, without his testimony. See also *Kevlik*, 724 F.2d at 849. ("We think it more important

---

[3] It should be noted that at oral argument on Ameriquest's motion, Fregeau indicated that he would seek a protective order if his deposition were noticed. Given the fact-laden nature of his testimony and its importance to Ameriquest, this is all the more reason to disqualify him so that his deposition can be noticed and, but for claims of privilege, completed.

that unethical conduct be prevented than that [a litigant] have an unfettered right to counsel of its choice.").

### III. CONCLUSION

For the foregoing reasons, the court ALLOWS Ameriquest's motion to disqualify. Plaintiff shall have forty-five days in which to arrange for the appearance of successor counsel. Further discovery is suspended in the interim.

IT IS SO ORDERED.

DATED: June 2, 2006

   /s/ Kenneth P. Neiman
KENNETH P. NEIMAN
Chief Magistrate Judge