IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

_____
                                    )
SUSAN DOUGLAS,                      )
                                    )
            Plaintiff,              )
                                    )   C. A. NO.: 04-30195-MAP
    v.                              )
                                    )
AMERIQUEST MORTGAGE COMPANY,        )
JOHN DOE 1                          )
                                    )
            Defendants.             )
_____)

**AMERIQUEST MORTGAGE COMPANY'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO ENFORCE THE PARTIES' SETTLEMENT AGREEMENT**

Defendant Ameriquest Mortgage Company ("Ameriquest") submits the following memorandum in support of its Motion to Enforce the Parties Settlement Agreement ("Settlement Agreement") between Ameriquest and plaintiff Susan Douglas ("plaintiff"). As more fully set forth below, Ameriquest and plaintiff negotiated resolution of this litigation over the course of several months and reached an agreement on the material terms of the settlement of this action on March 1, 2007. That same day, plaintiff informed the Court that the parties had reached an agreement on settlement and the Court entered a settlement order of dismissal. The parties subsequently exchanged settlement documents memorializing their agreement. Plaintiff, however, has moved to reopen the case. Well-established case law in Massachusetts dictates that, under the circumstances present in this matter, the parties' agreement reached on March 1, 2007 should be enforced. For the reasons set forth the below, the Court should enforce the parties' agreement.

**Factual Background**

On February 26, 2007, counsel for Ameriquest sent a letter to counsel for plaintiff with

Ameriquest's offer, which offer was the result of several prior negotiations with plaintiff's counsel in order to settle this matter. See Exhibit 1 to Declaration of R. Bruce Allensworth, dated October 12, 2007. ("Allensworth Decl."). On February 27, 2007, in response to Ameriquest's February 26, 2007 offer, plaintiff's counsel sent a counter-offer in an e-mail to counsel for Ameriquest. Ex. 2 to Allensworth Decl. On February 27, 2007 at 10:00 p.m., plaintiff's counsel e-mailed counsel for Ameriquest and stated "We're good to go at my end." Ex. 3 to Allensworth Decl.

Plaintiff's counter-offer consisted of the following material terms: (a) Ameriquest agreed to make a written electronic request that the three credit reporting agencies remove all of Ameriquest's credit entries on plaintiff's credit report and provide written documentation of that request to plaintiff's counsel; (b) upon plaintiff's receipt of the written documentation of Ameriquest's request to the credit reporting agencies, plaintiff agreed to provide Ameriquest with the valid Quitclaim Deed to the property at 2 Gold Street, Westfield, Massachusetts (the "Property"), and record the valid Quitclaim Deed at the Hampden County Registry of Deeds; (c) after Ameriquest received confirmation that plaintiff recorded the valid Quitclaim Deed to the Property, Ameriquest agreed to pay plaintiff the first installment of $12,500, except that Ameriquest could deduct $4,848.00 from the first installment of $12,500 to satisfy an existing second lien mortgage with Westfield City Community Development Department (and deduct such other sum as is demanded by the Westfield City Community Development Department or such other sum necessary to satisfy any other lien found to be on the Property); (d) Ameriquest agreed to verify in writing that plaintiff's mortgage debt has been satisfied and that no outstanding balance on the Ameriquest mortgage exists; (e) plaintiff agreed to vacate the Property by a date certain, upon which date Ameriquest agreed to provide plaintiff with the

second and final installment of $12,500; and (f) the parties agreed to provide full releases to each other and to stipulate to the dismissal of this matter with prejudice.  See Allensworth Decl. at para. 7 and Ex 2 thereto.

On February 28, 2007, counsel for Ameriquest in an e-mail to their client, recommended that Ameriquest accept the counter-offer from plaintiff's counsel.  Allensworth Decl. at para. 5.  Counsel for Ameriquest subsequently conferred on the telephone with their client-contact, reviewed the proposed agreement with the client-contact, and obtained the authorization to agree to the terms of settlement.  Id.  On March 1, 2007, counsel for Ameriquest informed plaintiff's counsel in a telephone conference that Ameriquest accepted the terms of plaintiff's counter-offer and that the parties reached an agreement to settle this matter in its entirety.  Id. at para. 6.

To that end, on March 1, 2007, plaintiff's counsel reported to the Court that the parties had agreed to a settlement of the entire dispute.  Id. at paras. 6, 9; see also Court Docket, "Remark," March 1, 2007.  That same day, the Court entered a Sixty Day Settlement Order of Dismissal, see Dckt. No. 65, and terminated the case.

The parties subsequently proceeded to formalize the terms of the settlement agreement into a written document.  In accordance with the settlement agreement, on March 6, 2006, Ameriquest transferred the $25,000 settlement proceeds to its attorneys, to be held in escrow pending the formalization of the written agreement.  See Dckt. No. 66, at para. 5; Allensworth Decl. at para. 10.  On April 30, 2007, plaintiff filed an agreed-upon motion to extend the Court's Sixty Day Settlement Order of Dismissal for another thirty days in order for the parties to "finalize their written settlement agreement."  See Dckt. No. 66, at para. 6.  In the Motion, plaintiff stated that "[t]he parties reached an agreement in principle to settle the matter on March 1, 2007…. The parties have exchanged draft forms of the settlement agreement, and defendant

has escrowed the agreed-upon settlement funds." Id. at paras. 3, 5.  The parties continued to exchange settlement papers, but plaintiff has not signed the settlement agreement, has moved to reopen the case, and is seeking to change the agreement between the parties to permit plaintiff to permanently stay at the Property.[1]

On May 29, 2007, plaintiff filed a motion to reopen the case.  See Dckt. No. 67.  On June 12, 2007, Ameriquest opposed the motion to reopen.  See Dckt. No. 71.  On October 3, 2007, the Court held a hearing on plaintiff's motion to reopen.  See Dckt. No. 74.

## Argument

### THE SETTLEMENT AGREEMENT MUST BE ENFORCED; THE PARTIES AGREED TO THE MATERIAL TERMS OF THE SETTLEMENT ON MARCH 1, 2007

It is undisputed that the parties reached a settlement on March 1, 2007 and informed the Court of their agreement.  When parties voluntarily enter into a settlement agreement and report it to the Court, "it cannot be repudiated by either party, and the court will summarily enforce that agreement."  Flebotte v. Dow Jones & Co., 2001 WL 35988082, at *2 (D. Mass. Jun. 28, 2001) (citation omitted).[2]  In fact, where parties report that a case has settled to the court, the First Circuit has rejected the argument that there can be no agreement until the parties execute a

---

[1] On October 11, 2007, plaintiff's counsel e-mailed what appears to be a copy of a Quitclaim Deed to the Property, dated May 29, 2007, from plaintiff to Ameriquest that appears to have been recorded on October 11, 2007 with the Hampden County Registry of Deeds. Ameriquest has not yet had the opportunity to review the title to examine the validity of the Quitclaim Deed.

[2] The Court, by its order of March 1, 2007 Sixty Day Settlement Order of Dismissal, (see Dckt. No. 65), retained jurisdiction over the matter, and can therefore hear and decide the instant motion and enforce the parties' settlement agreement.  Flebotte, 2001 WL 35988082, at *2; Quint v. A.E. Staley Manuf. Co., 246 F.3d 11, 14 (1st Cir. 2001).

- 4 -

written document.[3] Quint v. A.E. Staley Manuf. Co., 246 F.3d 11, 15 (1st Cir. 2001) (characterizing such argument as a "radical and doomed departure from the principles of contract law"); Kinan v. Cohen, 268 F.3d 27, 30, 33 (1st Cir. 2001) (enforcing settlement agreement; holding that plaintiff's objection that the "settlement had not been consummated … [because plaintiff] … had to approve the precise language of the [written] agreement" in order for settlement to be binding was insufficient to sustain a motion to reopen).

The fact that the paperwork had not yet been finalized and signed by plaintiff is irrelevant. Peters v. Wallach, 366 Mass. 622, 628 (1975); Correia v. Desimone, 34 Mass. App. Ct. 601, 602-03 (1993). An unexecuted settlement agreement is an enforceable contract that may be specifically enforced. Quint, 246 F.3d at 15; Correia, 34 Mass. App. at 603-04 (affirming judgment for specific enforcement of oral settlement agreement); Marshall v. Burchell, 2005 WL 100715, at *2 (Mass. Super. Ct. Jan. 13, 2005) (enforcing settlement agreement where "the mechanics of settlement were resolved," "the process for exchanging documents had begun," and "all material terms of the agreement had been defined and the parties uniformly expressed their intent to be bound"); Orion Research, Inc. v. Ross, 2003 WL 383250, at *2 (Mass. Super. Ct. Jan. 27, 2003) ("[w]here two parties enter into an oral agreement in court, and that agreement is set to be memorialized in writing at a later date, the oral agreement is enforceable and not contingent upon the written expression"). "Because settlement agreements enjoy great favor with the courts … it is only in the most extraordinary circumstances that such a pact will be vacated." Flebotte, 2001 WL 35988082, at *3.

Here, the terms of the settlement agreement were simple, straightforward, and definite:

---

[3] Nor can plaintiff dispute the existence of the settlement agreement, as plaintiff's counsel reported the case settled to the Court, and informed the Court of the settlement agreement in a subsequent pleading. See Flebotte, 2001 WL 35988082, at *3; Dckt. No. 66 at para. 3.

(a) Ameriquest agreed to make a written electronic request that the three credit reporting agencies remove all of Ameriquest's credit entries on plaintiff's credit report and provide written documentation of that request to plaintiff's counsel; (b) upon plaintiff's receipt of the written documentation of Ameriquest's request to the credit reporting agencies, plaintiff agreed to provide Ameriquest with the valid Quitclaim Deed to the Property; (c) after Ameriquest received confirmation that plaintiff recorded the valid Quitclaim Deed to the Property, Ameriquest agreed to pay plaintiff the first installment of $12,500, minus any amounts necessary to satisfy any liens on the property;[4] (d) Ameriquest agreed to verify in writing that plaintiff's mortgage debt has been satisfied and that no outstanding balance on the Ameriquest mortgage exists; (e) plaintiff agreed to vacate the Property by a date certain, upon which date Ameriquest agreed to provide plaintiff with the second and final installment of $12,500; and (f) the parties agreed to provide full releases to each other and to stipulate to the dismissal of this matter with prejudice.

The parties agreed to these material terms during a March 1, 2007 teleconference and expressed their intent to be bound.[5] Allensworth Decl. at para. 6. That same day, the parties notified the Court of their agreement, and the Court entered a Sixty Day Settlement Order of Dismissal. Id. at paras. 6, 9; Dckt. No. 65. The parties subsequently began exchanging documents to complete the transaction. Allensworth Decl. at para. 10. At all times, Ameriquest negotiated the agreement in good faith, and plaintiff's attempted repudiation of the agreement is wholly unsupported by controlling precedent. Quint, 246 F.3d at 15 (affirming motion to

---

[4] The parties agreed that Ameriquest could deduct $4,848.00 from the first installment of $12,500 to satisfy an existing second lien mortgage with Westfield City Community Development Department (and deduct such other sum as is demanded by the Westfield City Community Development Department or such other sum necessary to satisfy any other lien found to be on the property).

[5] On April 30, 2007, plaintiff's counsel informed the Court that "[t]he parties reached an agreement in principle to settle the matter on March 1, 2007." See Dckt. No. 66 at para. 3.

enforce settlement agreement); Kinan, 268 F.3d at 30 (same).  As such, plaintiff is bound to the terms of the Settlement Agreement and the Court should order enforcement of the settlement.

Because the time for performance of the Settlement Agreement as originally contemplated by the parties has passed, Ameriquest respectfully requests that the Court grant its Motion to Enforce the Parties' Settlement Agreement, enter the terms of the parties' Settlement Agreement as an Order of the Court in the form of the proposed order submitted herewith, and enforce the settlement agreement per the following time schedule: (a) within three (3) business days of the entry of the Court's Order plaintiff shall forthwith record and provide Ameriquest with the valid Quitclaim Deed to the property at 2 Gold Street, Westfield, Massachusetts (the "Property"); (b) within three (3) business days of the entry of the Court's Order, or the receipt by Ameriquest of a valid Quitclaim Deed to the Property, whichever shall come later, Ameriquest shall pay to plaintiff a first installment of $12,500, except that Ameriquest may deduct $4,848.00 from the first installment of $12,500 to satisfy an existing second lien mortgage with Westfield City Community Development Department (and may deduct such other sum as is demanded by the Westfield City Community Development Department or such other sum necessary to satisfy any other lien found to be on the property); (c) within three (3) business days of the entry of the Court's Order or the receipt of the valid Quitclaim Deed to the Property, whichever shall come later, Ameriquest shall make a written electronic request to Equifax Credit Information Services, Inc., Experian, TransUnion LLC, and any other credit reporting agency that Ameriquest may have reported to relative to the Property, to remove Ameriquest's tradeline and its credit reporting activity with respect to its entries onto plaintiff's credit history, and to provide written documentation of that request to plaintiff's counsel; (d) within three (3) business days of the entry of the Court's Order or the receipt of the valid Quitclaim Deed to the Property, whichever

shall come later, Ameriquest shall verify in writing that plaintiff's mortgage debt with Ameriquest has been satisfied and that no outstanding balance on the Ameriquest mortgage exists; (e) plaintiff shall vacate the Property on or before November 30, 2007 and shall leave the Property in broom clean condition; (f) as such time that plaintiff timely vacates the Property, which, in any event, must be on or before November 30, 2007, plaintiff shall give notice to Ameriquest's counsel of record; and (g) within five (5) business days of Ameriquest's counsel's receipt of such notice, Ameriquest may verify that plaintiff has vacated the property and thereupon shall pay plaintiff the second and final installment of $12,500 (less any outstanding lien balance that may remain unsatisfied by the first installment)..

## Conclusion

For the foregoing reasons, Ameriquest Mortgage Company respectfully requests that the Court grant its Motion to enforce the parties' settlement agreement and: (1) enter the terms of the settlement agreement as an Order of the Court, in the form of the proposed order submitted herewith; (2) order that plaintiff perform under the Settlement Agreement; (3) dismiss plaintiff's Complaint in its entirety with prejudice; and (4) grant such other relief as the Court deems just and proper.

- 9 -

October 12, 2007

Respectfully submitted,

AMERIQUEST MORTGAGE COMPANY

By its attorneys,

/s/ *R. Bruce Allensworth*

_____
R. Bruce Allensworth (BBO #015820)
(bruce.allensworth@klgates.com)
Ryan M. Tosi (BBO #661080)
(ryan.tosi@klgates.com)
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

## CERTIFICATE OF SERVICE

      I hereby certify this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 12th day of October, 2007.

                                      /s/ *R. Bruce Allensworth*
                                      _____
                                      R. Bruce Allensworth