## United States District Court
## for the District of Massachusetts
## Western Division

| | |
|---|---|
| **SUSAN DOUGLAS.**<br>    plaintiff,<br>v.<br>**AMERIQUEST MORTGAGE COMPANY**<br>    defendant. | Case No. **04-30195-MAP** |

### RESPONSE BY PLAINTIFF'S COUNSEL TO OCTOBER 30, 2007 ORDER

Counsel to plaintiff responds to the referenced Order and attached October 30, 2007 letter from plaintiff with deference to his ethical obligations of avoiding unnecessary embarrassment to his clients, and also with deference to avoiding unnecessary distractions from the main issue at hand: Defining the terms of settlement as of the March 1, 2007 report of settlement to the Court.

Plaintiff reiterates her having performed her immediate obligations, under any presentation of settlement terms as of March 1, 2007, by having recorded the deed conveying her home to defendant. She reiterates her desperate need for receiving the first installment funds so she may acquire replacement housing for herself and her family as quickly as possible. Whether reasonable or otherwise, defendant currently delays this process by refusing to provide plaintiff with the net first installment payment and clean credit which is also part of any presentation of the March 1, 2007 settlement terms. Defendant's new requirement of a court order is not part of those terms, and its refusal to perform its own payment and clean credit obligation places defendant in breach. Defendant's unclean hands have the

consequence of prohibiting plaintiff from acquiring replacement housing and further exacerbating this proceeding.

The March 1, 2007 terms contemplated plaintiff having six months from defendant's performance of providing plaintiff with the first installment payment and with clean credit. Defendant should be held to those terms. Defendant now controls the remaining performances of the parties.

Plaintiff's October 31, 2007 letter states that she understood there was an agreement between herself and defendant. She misunderstood the impact of having signed an intermediary draft agreement on May 1, 2007 which (1) incorporated proposed terms restricting defendant-Internal Revenue Service communications later rejected by the parties, and (2) was never signed by defendant. There is also confusion from the pending Motion to Reopen, which argues that there is no written agreement as the parties required, and the Court's comments at the October 3, 2007 hearing, to the effect that it may well rule that the parties reached an agreement when settlement was announced on March 1, 2007 and the Court will rule on the terms of that settlement.

The letter states that she believes she is facing a November 20, 2007 eviction order. This is a misunderstanding of counsel's communication to plaintiff of the outcome of the October 3, 2007 hearing.

The letter states that defendant said it would not pay the first installment or issue clean credit unless plaintiff provided a drop-dead date for vacating the premises. Plaintiff misunderstood counsel's recommendation to provide a drop-dead date as an attempt to expedite resolution, instead of further waiting for a Court ruling perhaps after defendant's requested oral argument on its motion to enforce settlement.

The letter states that plaintiff tried to get in to see counsel but kept getting put off. There was only one instance, on October 30, 2007, where plaintiff requested to see counsel the following day but counsel could not accommodate the request. Counsel had conflicting professional deadlines through the month's end. (Counsel has an extensive consumer bankruptcy practice. The U.S. Bankruptcy Code requires that all consumer bankruptcy filings include a Means Test which examines the filer's income for the six full months before the filing and, if appropriate, a very detailed exploration of the filer's expenses and applicable Internal Revenue Service allowances. 11 U.S.C. §§ 101(10A)(A)(i) (defining "current monthly income"); 707(b)(2)(A) (dismissal or conversion based upon "current monthly income"). Cases filed in October must provide this analysis for the six month period ending on September 30th. A one day delay into November would require an entirely new examination for the six months ending October 31st, which might lead to disastrous consequences of an unnecessary five year repayment plan or disqualification from all bankruptcy protections. Meeting with plaintiff on October 31st would have incurred this possibility for the bankruptcy cases which were otherwise ready for final review, client communications, and filing on October 31st.) Counsel had other appointments and

commitments after October 31st until the following Monday, November 5th, which was offered to plaintiff but rejected.

Emails and case log entries of related plaintiff-counsel communications are available for Court review. The multiple October 31, 2007 bankruptcy court filings are public records and also available for Court review.

                                             Plaintiff, by counsel

                                             /s/ Jed Berliner
                                             L. Jed Berliner, Esquire, BBO 039950
                                             Berliner Law Firm
                                             95 State Street, Suite 1010
                                             Springfield, MA  01103-2081
                                             telephone:  (413) 788-9877
                                             facsimile:  (413) 746-9877
                                             email:  ljed3@aol.com

### Certificate of Service

The undersigned certifies that this document was filed with the Court in a manner appropriate for consequential automated service of true electronic images to all ECF Registrants. A true copy of this document was served upon plaintiff by first class mail with postage prepaid and return address provided.

Date:  November 7, 2007            /s/ Jed Berliner
                                         L. Jed Berliner